# 21-2031

## United States Court of Appeals
## for the Second Circuit



NELSON PENA,

*Plaintiff-Appellant,*

v.

220 EAST 197 REALTY LLC, and 63 WEST L.L.C.,

*Defendants-Respondents.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

ABDUL HASSAN LAW GROUP, PLLC
*Attorneys for Plaintiff-Appellant*
215-28 Hillside Avenue
Queens Village, New York 11427
(718) 740-1000
*legal@abdulhassan.com*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

I.  JURISDICTIONAL STATEMENT ....................................................1

II.  ISSUES PRESENTED ........................................................................5

III.  STATEMENT OF FACTS/STATEMENT OF CASE .....................6

IV.  SUMMARY OF ARGUMENTS .....................................................13

V.  ARGUMENTS ...................................................................................19

1.  DEFENDANTS' EGREGIOUS CONDUCT IN CONCEALING
PLAINTIFF AND HIS EMPLOYMENT FROM THE UNION, AND THEN
CONCEALING THIS MATERIAL FACT FROM THE COURT AND
PLAINTIFF UNTIL CAUGHT DOING SO, IS RELEVANT TO ALMOST
EVERY ISSUE AND ARGUMENT HEREIN, AND INDEPENDENTLY
WARRANTS A DENIAL OF THE MOTION TO COMPEL ARBITRATION
UNDER THE UNION CBA ...................................................................19

2.  THERE WAS NOT AND COULD NOT BE A *KNOWING*, VOLUNTARY,
CLEAR AND UNMISTAKABLE WAIVER OF THE CONSTITUTIONAL
RIGHT TO A JURY TRIAL UNDER THE CBA – WHERE PLAINTIFF DID
NOT KNOW HE WAS IN A UNION – BECAUSE HE WASN'T, AND
WHERE THE UNION DID NOT KNOW OF PLAINTIFF – BECAUSE OF
THE EGREGIOUS CONDUCT OF DEFENDANTS IN NOT REPORTING
PLAINTIFF AND HIS EMPLOYMENT TO THE UNION ...............................25

3.  ARBITRATION CANNOT BE COMPELLED IN THIS CASE BECAUSE
OF DEFENDANTS PROFOUND DEFAULT AND EGREGIOUS
CONDUCT ..........................................................................................33

4.  ARBITRATION CANNOT BE COMPELLED BECAUSE THE UNION
HAS EFFECTIVELY DECLINED ...........................................................36

5. ARBITRATION CANNOT BE COMPELLED BECAUSE OF AN INTOLERABLE CONFLICT OF INTEREST AND EMPLOYER OVERREACHING ................................................................................39

6. DEFENDANTS MOTION MUST ALSO BE DENIED BECAUSE EVEN IF THE CBA CONTROLS, IT REQUIRES MEDIATION AND NOT ARBITRATION AT THIS STAGE ....................................................................42

7. ARBITRATION CANNOT BE COMPELLED IN THIS CASE UNDER THE EFFECTIVE VINDICATION DOCTRINE .................................................44

8. THE DISTRICT COURT HAD LEGAL AUTHORITY TO REVIEW AND DECIDE THE MOTION TO VACATE, INCLUDING UNDER FRCP § 60 ....45

VI. CONCLUSION ..............................................................................48

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*14 Penn Plaza LLC v. Pyett,*
  556 U.S. 247, 263 (2009)........................................................................39

*42nd & 10th Hotel, LLC v. New York Hotel & Motel Trades Council, AFL-CIO*,
  No. 1:21-CV-6250 (MKV), 2022 WL 955477, at *4 (S.D.N.Y. Mar. 30, 2022) ..2

*Abdullayeva v. Attending Homecare Servs. LLC*,
  928 F.3d 218, 225 (2d Cir. 2019) ................................................... 39, 43

*Adam Bruzzese, v. Merrick B. Garland*,
  No. 21-1448, 2022 WL 1669191, at 1 (2d Cir. May 26, 2022)..........................45

*Am. Exp. Co. v. Italian Colors Rest.,*
  570 U.S. 228, 235 (2013)........................................................................44

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
  450 U.S. 728, (1981)................................................... 14, 36, 39, 41, 42

*Barrows v. Brinker Rest. Corp.,*
  36 F.4th 45, 49 (2d Cir. 2022) ..................................................... 32, 33

*Bowen v. U.S. Postal Serv.*,
  459 U.S. 212, 103 S. Ct. 588, 74 L. Ed. 2d 402 (1983)......................................40

*Brady v. United States*,
  397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970) ....................27

*Brooklyn Savings Bank v. O'Neil*,
  324 U.S. 697 (1945)................................................................................36

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004, 1012-1013 (9th Cir. 2005)............................................................37

*Chambers v. NASCO, Inc.*,
  501 U.S. 32, 44 (1991)............................................................................22

*Coca-Cola Bottling Co. of New York v. Soft Drink & Brewery Workers Union Loc. 812 Int'l Bhd. of Teamsters*, 242 F.3d 52, 54 (2d Cir. 2001)...................................2

*Cota v. Art Brand Studios, LLC*, No. 21-CV-1519 (LJL), 2021 WL 4864588, (S.D.N.Y. Oct. 15, 2021) .............................................................................. 3, 37

*Crum v. Dodrill*, 562 F. Supp. 2d 366, 382–83 (N.D.N.Y. 2008)....................................................19

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Associates, LLP*, 6 N.Y.3d 371, 374, 812 N.Y.S.2d 435, 437, 845 N.E.2d 1265, 1267 (2006) ......27

*Hargrove v. Riley*, No. CV-04-4587 (DGT), 2007 WL 389003, at 11 (E.D.N.Y. Jan. 31, 2007).....22

*In re Gordon*, 780 F.3d 156, 161 (2d Cir. 2015) ..........................................................................23

*In re Repetitive Stress Injury Litigation*, 35 F.3d 637 (2d Cir. 1994) ...............................................................................3, 4

*In re Shengdatech, Inc. Sec. Litig.*, No. 11 CIV. 1918 LGS, 2015 WL 3422096, at 3 (S.D.N.Y. May 28, 2015).. 5, 46

*Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) ...............................................................................33

*Lahsen Aboul v. Ameritania 54th Associates, LLC*, 2021 WL 3887594 (S.D.N.Y. Aug. 31, 2021)......................................................20

*Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016) .................................................................... 26, 27

*Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 143 (2d Cir. 2013) .........................................................................3

*Mazza v. Dist. Council of New York*, No. CV-00-6854 BMC CLP, 2007 WL 2668116, at 16 (E.D.N.Y. Sept. 6, 2007) ................................................................................................................31

*Morgan v. Sundance, Inc.,*
  142 S. Ct. 1708, 1714, 212 L. Ed. 2d 753 (2022)............................. 16, 28, 34, 35

*Nat'l Equip. Rental, Ltd. v. Hendrix,*
  565 F.2d 255, 258 (2d Cir. 1977) .......................................................27

*New Prime Inc. v. Oliveira,*
  139 S. Ct. 532, 535 (2019)................................................................28

*Nicosia v. Amazon.com, Inc.,*
  834 F.3d 220, 229 (2d Cir. 2016) .......................................................28

*Pena v. 220 E. 197 Realty LLC,* No. 20-CV-7039 (JPO), 2021 WL 3146031,
  (S.D.N.Y. July 23, 2021) ............................................................ 25, 43

*People v. DePallo*,
  96 N.Y.2d 437, 441, 754 N.E.2d 751, 753 (2001) ...............................22

*Pre-Paid Legal Servs., Inc. v. Cahill*,
  786 F.3d 1287, 1294 (10th Cir. 2015) ...................................... 3, 33, 34

*Solis v. ZEP LLC*, No. 19CV4230 (JGK),
  2020 WL 1439744, at 6 (S.D.N.Y. Mar. 24, 2020)...............................32

*United States v. Prevezon Holdings Ltd.,*
  839 F.3d 227, 235 (2d Cir. 2016) ................................................ 4, 41

*Waters v. Churchill,*
  511 U.S. 661, 678 (1994)..................................................................43

*Wolinsky v. Scholastic Inc.*,
  900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012) ...................................40

## Statutes/Rules

28 U.S.C. § 1291 ...................................................................1, 2, 4

28 U.S.C. § 1331 ........................................................................1

28 U.S.C. § 1337 ........................................................................1

28 U.S.C. § 1367 ..................................................................................1

29 U.S.C. § 201 et Seq. .........................................................................1

9 U.S.C. § 3 ......................................................................................3, 34

9 U.S.C. § 4 .........................................................................................33

Federal Arbitration Act ("FAA") ................................................... passim

Labor Management Relations Act ("LMRA") ...........................................2

National Labor Relations Act ("NLRA") .................................................2

NYLL § 195 ........................................................................................32

FRCP § 60 ..................................................................................... passim

# I. JURISDICTIONAL STATEMENT

Plaintiff-Appellant Nelson Pena ("Plaintiff," "Appellant" or "Pena") filed this action in the United States District Court – Southern District of New York, on August 30, 2020, against Defendants-Appellees 220 East 197 Realty LLC and 63 West L.L.C. (collectively "Defendants," or "Appellees"). The district court had subject matter jurisdiction over Plaintiff's FLSA claims under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et Seq., and pursuant to 28 U.S.C. §§ 1331, 1337, and supplemental jurisdiction over Plaintiff's state law claims, including under 28 U.S.C. § 1367.

This Court has jurisdiction under 28 U.S.C. § 1291 and its precedents. Plaintiff timely filed his notice of appeal (A204-A205) on August 19, 2021 from the order of the Hon. J. Paul Oetken, compelling arbitration pursuant to a union CBA (A159-A167), in the United States District Court, Southern District of New York, on July 23, 2021 – following the May 3, 2022 order denying Plaintiff's motion to vacate (A282-A283), Plaintiff filed an amended notice of appeal on May 11, 2022. (A284-A298).

Once again, this Court has jurisdiction under 28 U.S.C. § 1291 and its precedents. At the outset, arbitration in this case was compelled solely under the union Collective Bargaining Agreement ("CBA"), and arbitration under a CBA is governed by statutes specific to unions such as the Labor Management Relations

Act ("LMRA"), and the National Labor Relations Act ("NLRA") - not the Federal

Arbitration Act ("FAA"). In this regard, the Second Circuit in *Coca-Cola Bottling*

*Co. of New York v. Soft Drink & Brewery Workers Union Loc. 812 Int'l Bhd. of*

*Teamsters*, 242 F.3d 52, 54 (2d Cir. 2001), stated in relevant part as follows:

> the Union asks us to hold that the district court's order directing
> arbitration is therefore not appealable pursuant to Section 16 of the
> FAA. However, we have jurisdiction because the FAA does not apply.

See also, *42nd & 10th Hotel, LLC v. New York Hotel & Motel Trades*

*Council, AFL-CIO*, No. 1:21-CV-6250 (MKV), 2022 WL 955477, at *4 (S.D.N.Y.

Mar. 30, 2022) ("As a threshold matter, the Court notes that the LMRA, not the

FAA, governs the Court's review of Petitioner's motion to vacate the labor

arbitration award."). In *Coca-Cola*, 242 F.3d 52 at 56, the Second Circuit stated

further as follows:

> We therefore have jurisdiction over this appeal. Although we are not
> bound by a judgment's description of itself as "final," the district court
> has clearly stated that no further proceedings will be conducted in this
> matter, and the judgment is therefore final and appealable under 28
> U.S.C. § 1291.

Similarly, the district court has pushed this case out of the courthouse –as

such, in the district court "no further proceedings will be conducted in this matter,

and the judgment is therefore final and appealable under 28 U.S.C. § 1291." *Coca-*

*Cola*, 242 F.3d 52 at 56.

Next, even if the FAA applied, this Court still has jurisdiction in the unique circumstances of this case. In this regard, as explained below, because the Defendants unlawfully and egregiously failed to report Plaintiff and his employment to the union, and even sought to conceal this failure from the Court and Plaintiff, arbitration is no longer possible or feasible and Defendants have defaulted in the arbitration process by concealing the union, the CBA and the arbitration provision from Plaintiff during his employment. See i.e. *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015)("9 U.S.C. § 3. Section 3 does not require a stay when the applicant for the stay is in default."). See also *Cota v. Art Brand Studios, LLC*, No. 21-CV-1519 (LJL), 2021 WL 4864588, (S.D.N.Y. Oct. 15, 2021)("To grant a stay in these circumstances would be to place the parties in a perpetual state of uncertainty—unable to proceed with the arbitration pursuant to that tribunal's rules but also unable to proceed with a litigation because the arbitration has not reached its conclusion. *Sink*, 352 F.3d at 1201"). Moreover, Defendants in their notice of motion requested a dismissal and not a stay. (A19).

In the alternative, this Court would have jurisdiction under the collateral order doctrine. See *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 143 (2d Cir. 2013). This Court would also have jurisdiction because it can treat this appeal as a petition for a writ of mandamus. See *In re Repetitive Stress Injury*

*Litigation*, 35 F.3d 637 (2d Cir. 1994). The requirements for a writ of mandamus are more easily satisfied in this case than in the very recent case of *United States v. Prevezon Holdings Ltd.,* 839 F.3d 227, 235 (2d Cir. 2016), in which this Court treated the appeal as a writ of mandamus and found that the requirements for issuing the writ were met. Once again, however, this Court has jurisdiction under 28 U.S.C. § 1291 as explained above and below.

## II.    ISSUES PRESENTED

**Issue 1:** Whether the district court erred in compelling this case to arbitration under the union CBA, especially where Defendants have now admitted that they failed (unlawfully and egregiously) to notify the union of Plaintiff and his employment, where Plaintiff did not know he was in a union, and where the union did not know of Plaintiff during his employment.

Standard of Review ("SOR"): De novo.

**Issue 2:** Whether the district court had the legal authority including under FRCP § 60, to vacate its July 23, 2021 order compelling arbitration – whether finality is required, and if so, whether the subject order was sufficiently final – especially where the district court does not disagree or dispute that the grounds for vacating said order are present in the form of Defendants' unlawful and egregious conduct in concealing Plaintiff and his employment from the union, and concealing this material fact from the district court and Plaintiff in the litigation, and where the sole basis for compelling arbitration was the union CBA.

Standard of Review ("SOR"): Abuse of Discretion - an error of law like that committed by the district court is an abuse of discretion. This also appears to be an issue of first impression for this Court. See i.e *In re Shengdatech, Inc. Sec. Litig.,* No. 11 CIV. 1918 LGS, 2015 WL 3422096, at 3 (S.D.N.Y. May 28, 2015) ("The Second Circuit has not expressly articulated this rule").

5

### III.   STATEMENT OF FACTS/STATEMENT OF CASE

On August 30, 2020, Plaintiff filed the instant action seeking to recover unpaid wages and related relief under the FLSA and NYLL. (A7-A18). On October 26, 2020, Defendants filed a motion to dismiss the case and compel arbitration under a Union Collective Bargaining Agreement ("CBA"). (A19-A87). In opposition to the motion, Plaintiff submitted affidavits, arguments and evidence that he was not a member of the union, never paid union dues, received any union benefits, or representation, etc. (A88-A143). Plaintiff testified as follows in his affidavit (A115):

> 10. I do not know that I was in a union while I worked for Defendants. I was never told that I was in a union. I was never given a copy of the document in Exhibit 4 with 16 pages and I was never told about this document.
>
> 11. Before this case was filed, I did not know what arbitration was and I did not agree to arbitrate anything with Defendants.

Notably, despite knowing that Plaintiff was not a member of the union, Defendants never provided this material information to the district court – as Defendants later admitted after the motion to vacate was filed, Defendants had unlawfully and egregiously failed to notify the union of Plaintiff and his employment. On July 23, 2021, the district court compelled arbitration pursuant to the CBA through a union that did not know of Plaintiff or his employment, and of which Plaintiff did not know he was a member.

6

After the Court's order compelling arbitration, Plaintiff's counsel emailed defense counsel to obtain information about the union and arbitration as follows (A171):

> Hope all is well. Writing to follow up on the Pena matter. First, I would like to know if you are certain that Mr. Pena was actually in the union and covered by the CBA and if so what is the contact information for the people at the union who would be handling any mediation/arbitration as as initial matter - as we pointed out, the plaintiff didn't know he was in a union assuming that is the case.

Plaintiff's counsel did not receive the requested information from defense counsels – likely because they knew all along that Defendants never reported Plaintiff to the union, wanted to continue their concealment of this material fact, and knew that as a result there would be no arbitration through the union – and Plaintiff would be left in limbo in perpetuity.

Subsequently, Plaintiff's counsel was able to locate the union which confirmed that it had no knowledge of Plaintiff, that Plaintiff was not a member and was not covered by the arbitration provisions in the CBA (A173):

> Mr. Hassan,
> That is correct.
> Mr. pena is not a dues paying Local 1931 Union member and is not covered by the local 1931 CBA.

At this stage, it became clear that Defendants had withheld very material information from the district court – information that would almost certainly change the outcome of the arbitration motion as further set forth in the arguments

7

below. As such, on August 19, 2021, based on this new and material information,

Plaintiff made a motion to vacate the arbitration order, including under FRCP Rule

60. (A168-A203).

After the motion to vacate was filed, defense counsels expressed anger and

displeasure via email to the union as follows (A226):

> Mr. Pena's attorney filed a motion with the court to ask the court to
> vacate its decision requiring arbitration. This attorney attached an
> email from wherein you stated that Mr. Pena was not a member of the
> Union, and that he was not covered by the collective bargaining
> agreement. Can you explain to me how that is possible, in light of the
> fact that he worked as an engineer, and Article 2 of the CBA explicitly
> states that engineers are covered by the contract?

After defense counsels' email to the union expressing displeasure, the union

purported to change its position to tow the company's line in an email that the

union provided to defense counsels as follows (A226):

> Mr. Pena was not reported to the Union therefore did not appear in the
> Union data base, however I was mistaken when I stated that Mr Pena
> was not covered by the Collective Bargaining Agreement.
> I would like to retract my e-mail response to Mr. Pena's attorney, with
> sincere apologies to all involved.
> Mr. Pena did in fact work for 63 West as an Engineer which is a
> classification covered and recognized under the CBA.
> The fact that Mr. Pena was an oversight by the company and not
> reported to the Union was the bases for the confusion on my part and
> lead to the inaccurate e-mail response to Mr. Pena's Attorney.
> Mr. Pena is covered by the Collective Bargaining Agreement and the
> Union will be seeking any loses of benefits etc. related to Mr. Pena.

At this point and despite Defendants attempt at damage control, they had no

choice and finally admitted that they had failed (unlawfully and egregiously) to

8

notify the union of Plaintiff and his employment – Defendants' witness Michele

DiSanto testified as follows in response to the motion to vacate (A228):

> Due to an administrative oversight during, the Union was not notified
> that Plaintiff was hired by 63 West LLC. However, Plaintiff was
> covered by the CBA. All individuals who work as engineers are
> covered by the CBA. If Plaintiff is owed any compensation or monies
> under the CBA, 63 West LLC will work with the Union to ensure that
> Plaintiff receives all that he is entitled to.

Notably, Defendants did not provide any evidence to support their

conclusory and boilerplate claim of "administrative oversight" – that is precisely

because the type of failure to report an employee to the union that Defendants

engaged in really does not happen in the absence of willfulness and fraud as further

explained below. In this regard, there are numerous steps and processes that must

be followed on a regular basis throughout an employee's employment in the union

context and it is virtually impossible for all of these steps to be missed by accident

or administrative oversight on a frequent and prolonged basis. Moreover, it appears

that Plaintiff was not the only similarly situation employee who was concealed

from the union by Defendants. (A268).

On May 3, 2022, the district court denied the motion to vacate on the

grounds that it did not have the legal authority under FRCP § 60 to rule on the

motion to vacate the order compelling arbitration. (A282-A283). Notably, the

district court did not dispute or disagree with Plaintiff that Defendants had engaged

in material misrepresentations and fraud on the court by concealing Plaintiff and

9

his employment from the union and then concealing this material fact from the court, Plaintiff and his counsel – and only reluctantly admitting it after they were cornered with information obtained from the union.

Despite an apparent coordinated representation to the district court by the union and the Defendants, that they will seek to obtain all benefits, wages, etc. that Plaintiff was entitled to under the CBA, they have done absolutely nothing in this regard, since making these representations to the district court in September 2021, and they have still not provided Plaintiff with any benefits whatsoever under the CBA. It appears that these material representations to the district court by the union and the Defendants were also false and meant to protect their interest in order to obtain a favorable judicial outcome - to the unfair detriment of the Plaintiff and an abuse of the judicial process.

Having seen no progress in terms of the representations of the union and Defendants to obtain benefits and compensation for the Plaintiff under the CBA, Plaintiff's counsel emailed the union on May 28, 2022 as follows:

> Forwarded message ---------
> From: **Ah Lg** <legal@abdulhassan.com>
> Date: Sat, May 28, 2022 at 12:26 PM
> Subject: SDNY Case No. 20-cv-07039/2nd Cir. Case No. 21-2031 -
> Pena v. 220 East 197 Realty LLC et al
> To: <cclemenza@esjb.org>, Abdul K. Hassan, Esq.
> <abdul@abdulhassan.com>, <nroa@esjb.org>
>
> Dear Mr. Clemenza,

Hope all is well. As you may recall from prior communications, I represent Mr. Pena in the above-referenced action which is now before the Second Circuit Court of Appeals on the arbitration issue, etc. However, I am writing to follow up on the following statements made by you and the defendants:

Clemenza September 1, 2021 email to Mr. Stuart Weinberger:

> Mr. Pena is covered by the Collective Bargaining Agreement and the Union will be seeking any loses of benefits etc. related to Mr. Pena.

Michele DiSanto September 2, 2021 declaration:

> However, Plaintiff was covered by the CBA. All individuals who work as engineers are covered by the CBA. If Plaintiff is owed any compensation or monies under the CBA, 63 West LLC will work with the Union to ensure that Plaintiff receives all that he is entitled to.

Please provide me with an itemization of the wages, benefits and other damages/recoveries Mr. Pena would be entitled to through the Union CBA. Please also address Mr. Pena's termiantion and rights in this regard he has under the Union CBA  - such as the right to be fired without cause, the right to notice, warnings, etc., the right to union representation before, during and after, etc. In order for us to act in the best interest of Mr. Pena and not in the interest of the employers, please do not share this email with the companies, their representatives or agents, etc. Depending on your response, I assume the company would be involved at some point. Also, in light of the above statements, please also detail what efforts have been made since those statements "to ensure that Plaintiff receives all that he is entitled to" and that the "Union will be seeking any loses of benefits etc. related to Mr. Pena."

Time is of the essence so please provide me with a response by Tuesday, May 31, 2022 by 5:00 p.m.

11

Plaintiff's counsel did not receive any response from the union to the above email. Plaintiff's counsel then followed up on the above email with the union on June 1, 2022 and but still did not receive any response from the union.

On June 20, 2022, and for reasons similar to those set forth in the May 28, 2022 email above, Plaintiff's counsel made a request for this Court to require the union to attend the July 11, 2022 settlement conference with this Court. The union received an email copy to this request but never responded to it. On July 5, 2022, this Court ruled that it could not compel a non-party such as the union to attend but it also stated in relevant part as follow:

> CAMP urges all parties and counsel to cooperate with each other to bring all helpful participants to the mediation. If the union would be helpful, CAMP is happy to have them participate.

The union also received a copy of the above ruling from the Court by email but once again, the union did not respond or participate - the July 11, 2022 settlement conference was subsequently cancelled. (2nd Cir. Case No. 21-2031, ECF No. 46).

It is highly unusual for a union that is supposed to be representing an employee to refuse to communicate with the employee or that employee's counsel or to even respond to the Court. It appears at this stage that the union is taking the view that it is united in interest with Defendants as both may be legally liable to the Plaintiff for depriving him of union benefits, representation and membership

12

throughout his employment – and that as a legal adversary of the Plaintiff at this stage, it cannot represent the Plaintiff in any way or even communicate with the Plaintiff or Plaintiff's counsel.

After the Court granted Defendants motion to compel arbitration on July 23, 2021, Plaintiff filed a Notice of Appeal on August 19, 2021. (A204-A205). However, in light of the motion to vacate that was filed on August 19, 2021, this Court stayed proceedings here until the motion to vacate was decided by the lower court and required monthly status reports that were filed by Plaintiff. Following the lower court's denial of the motion to vacate on May 3, 2022, Plaintiff filed an Amended Notice of Appeal on May 11, 2022. (A284-A298). This brief now constitutes the perfection of the appeal.

## IV. SUMMARY OF ARGUMENTS

The central question before this Court is whether the lower court erred in compelling arbitration under the union CBA. The answer is yes, for several compelling reasons.

First, almost all of the grounds for reversal are linked to Defendants unlawful and egregious failure to notify the union of Plaintiff and his employment. This by itself is also an independent reason for denying the motion to compel arbitration, because not only did Defendants unlawfully conceal Plaintiff and his employment from the union, but they also concealed this material fact from the

Court and Plaintiff until they were caught and only admitted it after the motion to vacate was filed.

Second, because Defendants unlawfully and egregiously failed to notify the union of Plaintiff and his employment, the union did not know of Plaintiff and the Plaintiff did not know he was in a union and did not know of the CBA. As such, as a matter of law there was not and could not have been a knowing, intelligent, voluntary, clear and unmistakable waiver of the Constitutional right to a jury trial, as is required.

Third, even if there was a valid waiver (there was not), arbitration cannot be compelled because arbitration jurisprudence does not require arbitration and/or a stay where the movant is in default in the arbitration process. The arbitration process begins with the arbitration agreement without which there cannot be any arbitration. Here, we have an unusual and egregious situation where Defendants defaulted in the arbitration process from the inception by unlawfully and egregiously failing to notify the union of Plaintiff and thereby depriving Plaintiff of the union, the CBA and the arbitration provision throughout his employment.

Fourth, even if there was a valid waiver (there was not), in the union context and under Supreme Court precedents such as *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, (1981), an employee can bring his claims in Court and not arbitration where the union does not pursue the claims. Here, the union could not

14

pursue the claims because of Defendants' failure to notify the union of Plaintiff and his employment, and now the union is not communicating with Plaintiff and his counsel and even with this Court, as set forth in the statement of facts above.

Fifth, even if there was a valid waiver (there was not), under Supreme Court and Second Circuit precedents as explained below, arbitration should not be compelled where there is an actual conflict of interest, bias etc. Here, Plaintiff likely has claims against both the union and Defendants - because he was unlawfully deprived of union membership, representation, wages and benefits, etc. As such, although the union has stopped communicating with Plaintiff and his counsel and there cannot be arbitration for this reason as well, the profound conflict of interest here requires a denial of the motion to compel – and because Defendants conduct is the ultimate source of the conflict, Defendants cannot complain about any denial of the arbitration motion. It would not be surprising if the union's legal counsel has advised it to remain silent in this case going forward given its legal exposure and jeopardy – that could also go beyond this case if the failures here to report and represent employees go well beyond Plaintiff and impact on other workers – as is very likely.

Sixth, even if there was a valid waiver (there was not), arbitration cannot be compelled under the effective vindication doctrine recognized by the U.S. Supreme Court. It is not difficult to conclude that in light of all the negative effects as laid

out above and below that flowed from Defendants' unlawful and egregious failure to report Plaintiff and his employment to the union, Plaintiff cannot effectively vindicate his statutory rights and claims in arbitration. In fact, no one has explained or cited any precedent as to how we can go back in time and comply with the deadlines that have passed, the procedures that were missed, and provide all the protections and benefits under the CBA that should have been provided long ago – as the U.S. Supreme Court reminded us in New Prime and Morgan, we simply cannot pave over bumpy statutory texts and inconvenience facts and make up new rules in order to get cases into arbitration. In other words, it is not clear at all, how we can put Humpty Dumpty back together again at this stage, and allowing this case to move forward in court in the only legally proper and realistic option.

The other major question before this Court is whether the district court properly denied the motion under FRCP § 60 to vacate the arbitration order – Plaintiff had moved to vacate after learning that the union did not know of the Plaintiff who was not a union member – it was only after the motion to vacate was filed with this information, that Defendants finally made their blockbuster admission that they never reported Plaintiff and his employment to the union – the district court had compelled arbitration solely under the union CBA. The district court denied the motion to vacate on the sole grounds that it did not have authority to vacate under FRCP § 60 because in its view, the arbitration order was not

16

sufficiently final for purposes of appeal. Notably, the district court did not dispute or disagree that the egregious conduct of Defendants in concealing Plaintiff from the union and then concealing this material fact from the Court and Plaintiff, would be sufficient grounds to vacate the arbitration order if the district court had reached the merits of the vacate motion. The lower court is wrong for several compelling reasons.

First, in the unique circumstances of this case, the arbitration order is sufficiently final for purposes of appeal under the union statutes as well as under the FAA – even though the FAA does not apply under Second Circuit precedent because arbitration was compelled under the union CBA.

Second, under the plain language of FRCP § 60, the word "final" controls the word "judgment" but not the word "order." For example, a statement that food will be first be given to "old men, women and children," when reasonably interpreted, is not limited to old men, old women and old children. The other interpretation would also violate the absurdity principle because it would allow fraudulently obtained orders to control and destroy the integrity of the judicial process and impose serious and even irreversible harm on litigants simply because such orders are deemed non-final.

Third, an order can be final for purposes of FRCP § 60, without necessarily being final for purposes of appeal. In fact, the need for review and vacatur under

FRCP § 60, is greatly higher in situations where correction of such orders and the damage they cause is not available through appeal. By way of reinforcement, orders such as those compelling arbitration unlike routine orders such as discovery orders, effectively ends the litigation because they stop proceedings in the court and sends the case outside of court – to a forum that does not have the power to change or correct judicial orders.

Fourth, if this court finds that the arbitration order cannot be reviewed and vacated under FRCP § 60, it should make clear that the district court has the inherent and general authority to review and vacate the arbitration order outside of FRCP § 60 – under tis general powers, including but not limited to any ground set forth in FRCP § 60 – precisely because the order is not final – in the event the Court finds the order was not sufficiently final (the orders are final for purposes of appeal as explained above).

# V.    ARGUMENTS

## 1. DEFENDANTS' EGREGIOUS CONDUCT IN CONCEALING PLAINTIFF AND HIS EMPLOYMENT FROM THE UNION, AND THEN CONCEALING THIS MATERIAL FACT FROM THE COURT AND PLAINTIFF UNTIL CAUGHT DOING SO, IS RELEVANT TO ALMOST EVERY ISSUE AND ARGUMENT HEREIN, AND INDEPENDENTLY WARRANTS A DENIAL OF THE MOTION TO COMPEL ARBITRATION UNDER THE UNION CBA

At the outset, this Court should make it crystal clear that employers who violate their obligations and fail to report employees and their employment to the union – thereby denying those employees of union benefits and representation during their employment, will not be allowed to compel arbitration under the union CBA that they deprived the employees of, especially where, as here, those employers also withheld this material fact from the Court and Plaintiff/Plaintiff's counsel during the motion to compel arbitration until they were caught doing so, and in light of the other points and arguments below.

There is powerful evidence that Defendants' omissions/misrepresentations were intentional and/or in bad faith – thus warranting a complete denial of Defendants' motion to compel and an award of fees and costs to Plaintiff. See i.e. *Crum v. Dodrill*, 562 F. Supp. 2d 366, 382–83 (N.D.N.Y. 2008)(dismissing pleading because of material misrepresentations - failure to disclose material information).

First, it is reasonable to conclude that Defendants knew at the time they briefed the motion to compel that they had failed to report Plaintiff to the union. In this regard, the central issue at the time Defendants filed their motion was whether there was a knowing, voluntary, intelligent, clear and unmistakable waiver of the Constitutional right to a jury trial – obviously, whether the union knew of the Plaintiff and his employment, is material to the question of whether there was a knowing waiver by the union on behalf of the Plaintiff, as well as being material to the many other arguments below. Under FRCP Rule 11, Defendants would have been required to do at least very basic due diligence such as doing a basic review of their records which would have revealed that Plaintiff was never reported to the union and never treated as a union member and was never treated as an employee covered by the CBA. Second, Plaintiff in his opposition raised serious issues about whether he was in the union and covered by the CBA during his employment – certainly, any reasonable defendant would have followed up to verify through its records whether Plaintiff was a union member and treated as and covered under the CBA – whether he was reported to the union – Defendants did not need to investigate because they knew all along that they did not report Plaintiff to the union.

Very significantly, is *Lahsen Aboul v. Ameritania 54th Associates, LLC,* 2021 WL 3887594 (S.D.N.Y. Aug. 31, 2021), cited by Defendants in the

20

district court which involved Defendants' only witness on their motion to compel

arbitration - Mr. Bienenfeld, as well as one of the defense counsels, as well as the

same union in this case. Specifically, when the issues of union membership and

CBA coverage were raised in *Aboul*, Mr. Bienenfeld reviewed the relevant records

and stated as follows (Bienenfeld Decl. ¶ 2, ECF No. 55 – SDNY Case No. 19-CV-

9986)(A274-A281):

> Annexed hereto and incorporated herein as Defendants' Exhibit B are
> true and correct copies of documents showing union dues being
> deducted from Plaintiff Lahsen Aboul's wages, from December 2018
> until April 2019. The union dues were paid by Plaintiff's employer,
> Ameritania Hotel, to Amalgamated Local 1931, which was the union
> representing employees who worked at the Ameritania Hotel.

The above is further powerful evidence that as to the issue of union

membership and CBA coverage in this case/waiver of jury trial right, Mr.

Bienenfeld should have and would have reviewed the records such as the records

about union dues. We can therefore reasonably conclude that the defense in this

case knew that Plaintiff was never reported to the union and only revealed that

information to the Court at this late stage when they had no choice in light of the

union's email to Plaintiff's counsel and the motion to vacate. Similarly, defense

counsels never provided Plaintiff's counsel with the union information when he

requested it from them (A170-A174) – because they obviously knew all along that

Defendants never informed the union of Plaintiff and his employment and they

wanted to continue the concealment, having already obtained a favorable judicial ruling because of this material concealment/misrepresentation.

This Court should make it clear that it will not allow arbitration jurisprudence to be abused in this manner, and swiftly deny Defendants' motion to compel arbitration. This Court should also direct the defense to state when they acquired knowledge that Plaintiff was never reported to the union and why this information was not provided to the Court earlier – with full details. Defendants and the union should also be directed to audit their payroll and employee lists to ensure that all employees that should be reported to and protected by the union have been reported and are being protected by the union. See i.e. *People v. DePallo*, 96 N.Y.2d 437, 441, 754 N.E.2d 751, 753 (2001) ('In light of these limitations, an attorney's duty to zealously represent a client is circumscribed by an "equally solemn duty to comply with the law and standards of professional conduct to prevent and disclose frauds upon the court" (id., at 168–169, 106 S.Ct. 988).'. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("[A] court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud."). "The Court's inherent powers serve "to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants." *Hargrove v. Riley,* No. CV-04-4587 (DGT), 2007 WL 389003, at 11 (E.D.N.Y. Jan. 31, 2007). As the Second Circuit pointed out

22

in *In re Gordon*, 780 F.3d 156, 161 (2d Cir. 2015), the duty of candor is basic and fundamental to judicial proceedings and that this duty applies to acts of commission as well as acts of omission.

Next, we can also reasonably conclude that the defense also misrepresented to the Court the reason why Plaintiff was never reported to the union. In this regard, Defendants put forth a self-serving and conclusory explanation of "administrative oversight" (A228), without any supporting details, facts and evidence. On the other hand, the circumstances and available information compellingly contradict Defendants' explanations.

Notably, the hiring and management of union employees is an elaborate process that presents numerous opportunities for both the Defendants and the union to prevent and discover any oversight. For example, there is notice requirement to the union at time of hiring, firing, with respect to health benefits, retirement contributions, union dues, etc. – on a weekly basis. See requirements set forth in CBA at A42-A57.

Very significantly, as we explained to the district court in the motion to vacate, based on additional research and information including additional information obtained from Plaintiff, there are other employees at the building in which Plaintiff worked who would qualify for union membership/CBA coverage under Defendants' interpretation – given that they worked as porters and painters,

23

but who may not have been reported to the union by Defendants, and who Plaintiff believes were not in the union – including, Jonathan (porter), Higinio Jose Penalo (porter), and Segundo Lagarza (painter). If it turns out that these individuals were also not reported to the union, it will also destroy Defendants' conclusory and unsupported claim of "administrative oversight" and show that there was an intentional and widespread failure to report employees to the union – which in effect results in the employees, being defrauded by Defendants – of significant amounts of wages, benefits, etc.

Unfortunately, because union employment comes at greater costs to employers – in the form of wages, benefits, etc., it is not uncommon for unscrupulous employers to employ and conceal employees from the union that should be in the union – and as this case shows, such bad behavior by such employers is usually directed at vulnerable employees like Plaintiff with language challenges, and who are generally not otherwise able to ascertain and assert their rights during their employment.  Adding insult to injury, Defendants would like this Court to bless their egregious and improper failure to report Plaintiff, and to send this case to their handpicked arbitrators named in the CBA, so that Defendants face no meaningful consequence and their egregious conduct and violation of employees' rights continues – rinse and repeat – this Court should not endorse this conduct. Ironically, the only time Defendants want Plaintiff to be

covered by the CBA is when they want to use the CBA to conceal their total violation of the CBA itself during Plaintiff's employment. This Court should reject such abuse of arbitration jurisprudence by Defendant and swiftly deny the motion to compel arbitration and reverse the rulings of the district court.

**2. THERE WAS NOT AND COULD NOT BE A *KNOWING*, VOLUNTARY, CLEAR AND UNMISTAKABLE WAIVER OF THE CONSTITUTIONAL RIGHT TO A JURY TRIAL UNDER THE CBA – WHERE PLAINTIFF DID NOT KNOW HE WAS IN A UNION – BECAUSE HE WASN'T, AND WHERE THE UNION DID NOT KNOW OF PLAINTIFF – BECAUSE OF THE EGREGIOUS CONDUCT OF DEFENDANTS IN NOT REPORTING PLAINTIFF AND HIS EMPLOYMENT TO THE UNION**

Although there are questions that require additional discovery as to whether Plaintiff was covered by the CBA, this Court can conclude as a matter of law that even if Plaintiff was covered by the CBA, Plaintiff's right to a jury trial was not waived, because it is not disputed and genuinely disputed that Plaintiff did not know he was a union member (because he was not) , the union did not know of Plaintiff, and in light of Defendants' damning admission – only after the FRCP § 60 motion to vacate was filed, that Defendants violated their legal obligations and failed to notify the union of Plaintiff and his employment.

The district court stated in relevant part as follows (*Pena v. 220 E. 197 Realty LLC*, No. 20-CV-7039 (JPO), 2021 WL 3146031, at *3 (S.D.N.Y. July 23, 2021):

25

> Pena argues that he "was not ... aware that he was in a union" and therefore could not be bound by the terms of the collective bargaining agreement. (Dkt. No. 18 at 11.) But Pena's supposed lack of awareness is irrelevant. Under the terms of the agreement, the union is recognized as the "sole and exclusive bargaining agent for all full and regular part-time employees." (Dkt. No. 14–3 art. 2.)

We will explain below that the district court is wrong as to the effect of "Pena's supposed lack of awareness" – the district court seemed uncertain about Plaintiff's lack of awareness because the district court seem to place a lot of blind trust in Defendants and it was only after the motion to vacate when Defendants were caught red handed, that Defendants made their damning admission that they never reported Plaintiff and this employment to the union. However, it is notable that the district court did not conclude that the union's lack of awareness of Pena was irrelevant. Moreover, the district court failed to distinguish between general employment terms/conditions such as hours and wages, and the waiver of a Constitutional right to a jury trial which is subject to a very high standard – *knowing*, voluntary, intelligent, clear and unmistakable.

It is well settled, that even if an employee can be covered by a CBA with an arbitration provision, the employee will not be required to arbitrate his claims unless the high standard for waiver of the Constitutional right to a jury trial is met. See i.e. *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016).

Because the arbitration at issue here requires the waiver of the Constitutional right to a jury trial, Defendants must not only show the existence of such an

26

agreement/waiver, they must also show that such a waiver was *knowing*, voluntary and intelligent. *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) ("It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally. Indeed, a presumption exists against its waiver.).

See also, *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Associates, LLP*, 6 N.Y.3d 371, 374, 812 N.Y.S.2d 435, 437, 845 N.E.2d 1265, 1267 (2006) ("A party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' 'clear, explicit and unequivocal' agreement to arbitrate.."). Consistent with these requirements, this Court in the union context has also required that a waiver of the Constitutional right to a jury trial to be "clear and unmistakable." See i.e. *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016) ("The issue is whether the CBA governing Plaintiff's employment contains a "clear and unmistakable" waiver of Plaintiff's right to pursue his statutory claims in federal court.").

A motion to compel arbitration is this context is evaluated under the summary judgment standard. . See i.e. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Defendants not only have to satisfy the very high standard for waiver of the precious Constitutional right to a jury trial, they have to submit sufficient, competent and admissible evidence from persons with actual and personal knowledge and do so beyond genuine as to every material fact – they have failed miserably to so do.

Moreover, a unanimous U.S. Supreme Court in See i.e. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 535 (2019), reminded us that 'Courts, however, are not free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal. Rather, the Court should respect "the limits up to which Congress was prepared" to go when adopting the Arbitration Act.' More recently, a unanimous U.S. Supreme Courtin *Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1714, 212 L. Ed. 2d 753 (2022), reminded us again that courts 'may not make up a new procedural rule based on the FAA's "policy favoring arbitration."' These successive and important reminders from unanimous U.S. Supreme Court panels were necessary because arbitration jurisprudence was starting to resemble a massive paving operation – with courts "pav[ing] over bumpy statutory texts" and inconvenient facts, while they "make up [] new procedural rule[s] based on the FAA's policy favoring arbitration." As such, there is no policy favoring arbitration

28

where there is not a knowing, voluntary, intelligent, clear and unmistakable waiver of the right to a jury trial, or where arbitration is not otherwise required as set forth herein. Similarly, there is no policy favoring the granting of a motion to compel arbitration where there are genuine issues of material fact that require a jury trial, after all reasonable inferences are drawn in Plaintiff's favor and all doubts resolved in Plaintiff's favor as well.

In the union context, the union can waive the Constitutional right to a jury trial on behalf of an employee in the right circumstances – in essence, under the theory of agency – that the union is the agent of the employee. However, it is obvious as a matter of law that there cannot be a knowing waiver by an employee through the union as an agent, where the employee does not know he is in a union and knows nothing of the waiver, and where the union knows nothing of the employee – the essential element of a knowing waiver is therefore missing in this case – especially where it appears that the movants intentionally and fraudulently concealed Plaintiff and his employment from the union. Here, after Plaintiff testified that he did not know he was a union member (because he was not), (A115 ¶ 10), and after the union stated it did not know of Plaintiff and his employment (A175; A226), Defendants finally admitted that they violated their legal obligations and never reported Plaintiff and his employment to the union. (A227-A228). We know of no case where arbitration was compelled and a waiver of the

Constitutional right to a jury trial was found in these circumstances – because the union usually is not ignorant about those it represents unless there is some fraud by the employer, in concealing the employee and employment.

A ruling that there was no waiver by Plaintiff under the required standard, is not only obvious and required by settled principles of constitutional, arbitration and labor jurisprudence, it is also absolutely required to prevent fraud and exploitation of workers like Plaintiff and to prevent a gross undermining of arbitration and labor laws. Such a ruling would prevent employers and/or unions from keeping workers out of unions, depriving them of the union protections and benefits, and when the employee tries to vindicate his statutory rights in court, fraudulently attempt to force him to arbitrate through a union that did not even know of Plaintiff's existence and cannot even conduct an arbitration in these circumstances in the first place.

In the union context, notice, knowledge and ratification of the waiver of the Constitutional right to a jury trial is usually provided during the hiring process, and through the CBA which is ratified by union membership and made available to all those covered by it. However, because it is now undisputed that Defendants never reported Plaintiff and his employment to the union, Plaintiff was never provided with union information and arbitration information through the hiring process, through the CBA or otherwise. In terms of the purported collective bargaining

30

agreement ("CBA"), Plaintiff was never provided with a copy of the CBA nor was he ever informed about the CBA. (A115 ¶ 10). In fact, Plaintiff was not even aware that he was in a union (A115 ¶ 11), and had no idea what arbitration is (A115 ¶ 11). See also, *Mazza v. Dist. Council of New York, No.* CV-00-6854 BMC CLP, 2007 WL 2668116, at 16 (E.D.N.Y. Sept. 6, 2007)("Should plaintiff prevail in proving that the CBA applied to other projects and that he performed covered work on those projects, a reasonable jury could find that the Union acted arbitrarily or in bad faith by failing to so much as notify the employees that there was a CBA and a Union in place."). That "bad faith" here at minimum, came from Defendants, who failed to report Plaintiff and his employment to the union – thereby depriving Plaintiff of the union, the CBA, union wages and benefits throughout his employment. This Court should make it clear that given the requirement that the waiver of a Constitutional right be knowing, the employee must be provided with sufficient and adequate notice and knowledge that the union has waived  the employee's constitutional right to a jury trial – such as through the hiring process and by actually providing the employee with written documents such as the CBA.

In addition, while the Court can stop here and decide this appeal in Plaintiff's favor, there is more. In this regard, any notice and knowledge of the waiver of the constitutional right to a jury trial is not effective unless it is done in a language that is understood by an employee.

In this regard, all of the purported agreements in this case including the purported CBA are written in English but Plaintiff is Spanish speaking and could not read or understand the agreements as written in the English, even when presented to him after this case was filed. (See A114. ¶ 6-9). In *Solis v. ZEP LLC*, No. 19CV4230 (JGK), 2020 WL 1439744, at 6 (S.D.N.Y. Mar. 24, 2020) the Court stated in relevant part as follows:

> Ortiz, like Solis, is illiterate in English. The evidence shows that, like Solis, Ortiz was made to sign the purported arbitration agreement under circumstances in which he had no meaningful opportunity to have the document translated into Spanish. The purported arbitration agreement is therefore not enforceable and the motion to compel Ortiz to arbitrate his claims is denied.

In addition to *Solis*, and even though NYLL § 195 does not specifically mention arbitration agreements, it evinces New York's policy of requiring employers to provide important employment documents and information to employees in a language they can easily understand such as their primary language – something that also seems to be a matter of logic and common sense.

At minimum, a reasonable jury can easily and reasonably conclude that there was no knowing, voluntary, intelligent, unambiguous, clear and unmistakable waiver of the Constitutional right to a jury trial. This Court recently reversed an arbitration ruling on the grounds that factual disputes required a jury trial. See i.e. *Barrows v. Brinker Rest. Corp.,* 36 F.4th 45, 49 (2d Cir. 2022)(At this stage, we do not know. But in deciding a motion to compel arbitration, as for a summary

judgment motion, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). And to the extent this case turns on Barrows's (and on Brinker's) credibility or trustworthiness, the place to sort it out is, as the FAA provides, at "trial." 9 U.S.C. § 4.).

Here, this case is much more compelling in Plaintiff's favor than in *Barrows*. In this regard, the dispute in *Barrow*'s involved competing affidavits but here after being caught red handed, Defendants were forced to make the damming admission that they never reported Plaintiff and his employment to the union in the first place. Moreover, a reasonable jury can easily conclude that Defendants are not credible because they dishonestly and fraudulent concealed Plaintiff from the union for financial gain, then withheld that information from the Court – and as a result they can disbelieve Defendants and find that there was no waiver as required by law. In light of these falsehoods, a jury can also disbelieve all of the defense representations and evidence and testimony for this reason as well especially under the jury instruction Falsus in uno, falsus in omnibus.

**3. ARBITRATION CANNOT BE COMPELLED IN THIS CASE BECAUSE OF DEFENDANTS PROFOUND DEFAULT AND EGREGIOUS CONDUCT.**

Arbitration jurisprudence – whether under the FAA or the union statutes, does not require arbitration where the movant is in default. See i.e. *Pre-Paid Legal*

*Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015)("Alternatively, lifting the stay was permissible under § 3 because Mr. Cahill was "in default in proceeding with [the] arbitration." 9 U.S.C. § 3. Section 3 does not require a stay when the applicant for the stay is in default.").

Although default generally involves delays in moving for arbitration, the default here is more profound in its very nature and the fact that it occurred from the inception - that Defendants violated their legal obligations by failing to report Plaintiff and his employment to the union – without such knowledge, there could be no union involvement, no application of the CBA and arbitration process, and this case was properly and correctly commenced in court as a result. The arbitration process begins with the arbitration agreement itself, and Defendants defaulted in the arbitration process from the very first step, by depriving Plaintiff of the union, the CBA and the arbitration provision in it.

This Court should make it clear that defendants who conceal an employee's identity and employment from the union, cannot then seek to compel that employee to arbitrate through the union. This conclusion is consistent with and may even be required by the recent unanimous U.S. Supreme Court decision in *Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1714, 212 L. Ed. 2d 753 (2022), where the Court stated in relevant part as follows:

> Stripped of its prejudice requirement, the Eighth Circuit's current waiver inquiry would focus on Sundance's conduct. Did Sundance, as

> the rest of the Eighth Circuit's test asks, knowingly relinquish the right to arbitrate by acting inconsistently with that right? See supra, at 1711 - 1712. On remand, the Court of Appeals may resolve that question, or (as indicated above) determine that a different procedural framework (such as forfeiture) is appropriate. See supra, at 1712. Our sole holding today is that it may not make up a new procedural rule based on the FAA's "policy favoring arbitration."

Here, the conduct that warrants waiver/forfeiture of arbitration by Defendants is a lot worse than the conduct in *Morgan*. In this regard, and as set forth above, Defendants egregiously defaulted from the inception by failing to notify the union of Plaintiff and of his employment – thereby depriving Plaintiff of the union, the CBA and the arbitration provision in it. Moreover, while seeking to compel arbitration under the CBA, Defendants by their egregious conduct acted as if the CBA and its arbitration provision did not exist at all and violated every aspect of the CBA during Plaintiff's employment – including the CBA provisions regarding wages, benefits, termination only for good cause and many other procedural benefits and safeguards. In other words, Defendants concealed the union, the CBA and the arbitration provision from Plaintiff throughout his employment and now seek to hold up the CBA when they want to benefit from it at Plaintiff's expense – such one-sided and abusive behavior by Defendants in not consistent with arbitration jurisprudence and must be rejected by this Court as a matter of law.

## 4. ARBITRATION CANNOT BE COMPELLED BECAUSE THE UNION HAS EFFECTIVELY DECLINED

It is well settled that when a union does not pursue an employee's claim through the arbitration process, the employee has a right to bring those claims in Court. See *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728 (1981). This is especially so in a case like this one where we are dealing with FLSA claims which cannot be waived or forfeited as a matter of law. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015).

Here, the union has effectively declined to pursue arbitration and for this reason as well, Plaintiff is free to move forward in court and the motion to compel must be denied. In this regard, as set forth above, the union has stopped communicating with Plaintiff after receiving an angry email from defense counsel expressing Defendants' displeasure with the union and the information the union had provided to Plaintiff. Notably, the union did not even respond to this Court and the efforts to have it participate in the mediation scheduled by this Court – as set forth in the statement of facts above. Significantly, it is also reasonable to conclude that the union views itself at this point as the legal adversary of the Plaintiff and therefore cannot represent Plaintiff in this matter – given that Plaintiff may have legal claims against both the union and Defendants because Plaintiff was

unlawfully deprived of union benefits, wages and representation throughout his employment.

In *Cota v. Art Brand Studios, LLC*, No. 21-CV-1519 (LJL), 2021 WL 4864588, at 11–12 (S.D.N.Y. Oct. 15, 2021), the court refused to compel arbitration because of difficulties in moving forward with arbitration involving the defense and third party (AAA) – here we have difficulties with the defense and a third party (the union):

> These rulings are a logical corollary to the proposition that the "district court can[not] force an independent arbitration organization such as the AAA to ignore its own rules and re-open a case that it has previously closed." *Steffanie A.*, 2020 WL 4201948, at *4. To grant a stay in these circumstances would be to place the parties in a perpetual state of uncertainty—unable to proceed with the arbitration pursuant to that tribunal's rules but also unable to proceed with a litigation because the arbitration has not reached its conclusion. *See Sink*, 352 F.3d at 1201. That result would be precisely contrary to "[a] prime objective of an agreement to arbitrate," which is "to achieve 'streamlined proceedings and expeditious results.'"

Similarly, in this case, the union cannot be forced to conduct an arbitration – especially where Defendants failed to include the union in their motion and in light of the other points raised – conflict of interests, etc. In *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012-1013 (9th Cir. 2005), the Court of Appeals stated in relevant part as follows:

> On the assumption that Brown's narrative is true, this case displays a dark side of our nation's policy in favor of arbitration … The American Arbitration Association could not compel Dillard's to pay its share of the filing fee, and in the absence of the fee it could not

37

proceed. Brown had no choice but to come to court. Many people in Brown's position would simply have given up.
To promote our national policy in favor of arbitration, *see Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), we must decline to compel it in this case.

In light of the union's refusal to respond to Plaintiff and even the Court, it is really not possible for arbitration to occur in this matter and Plaintiff has suffered too much expense and delays already – Plaintiff also does not want to be pushed out of court, given the runaround in perpetuity and have to rely on the very persons/entities that fraudulently kept him out of the union in the first place and deprived him of lots of money and benefits as a result.

Defendants argue that if the union does not represent Plaintiff or pursue the claims, the CBA requires the Plaintiff to arbitrate his claims individually. However, the union does not have any authority whatsoever to enter into any agreement requiring the Plaintiff to conduct arbitration by himself without the union or to obligate Plaintiff to pay for such arbitration – especially in light of the other arguments and the powerful fact that Defendants concealed Plaintiff and his employment from the union and there was never any knowing, voluntary, intelligent, clear and unmistakable waiver of the Constitutional right to a jury trial in the first place. The authority of the union to bargain is derived from the various union statutes and the right to a jury trial comes from even higher authority in the Constitution - Defendants have pointed to nothing in those statutes that authorized

the union to enter into an agreement to require the employee to arbitrate alone

without the union and to pay for such arbitration – this would be the opposite of

collective bargaining. Enforcing such a provision would also violate Plaintiff's due

process rights as he never agreed to it and the union was never authorized to enter

such an agreement on behalf of Plaintiff. Also problematic, is the pre-selection of

two certain mediators that were picked by the union and the Defendants who at this

point are united in interest against the Plaintiff.

### 5. ARBITRATION CANNOT BE COMPELLED BECAUSE OF AN INTOLERABLE CONFLICT OF INTEREST AND EMPLOYER OVERREACHING

Although a generalized concern about conflict of interest and about the

union pursuing the claims less vigorously may not be enough, ((*14 Penn Plaza*

*LLC*, 556 U.S. at 269–70; *Barrentine*, supra, at 742), specific and actual concerns

are enough and are present here. By way of reinforcement, this Court in

*Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 225 (2d Cir. 2019),

recognized that issues such as conflict of interest bias and bad faith as to arbitrators

(and by extension unions) are grounds for not compelling arbitration when it stated

that, "Abdullayeva does not argue that Article 8(B)'s procedures are lacking in

notice, or that the selected arbitrator is biased or would conduct arbitration

proceedings in bad faith."

Unlike statutes like the ADEA in *Penn Plaza*, the concern about employer overreaching and collusion is ever present and material in FLSA cases as explained in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and other cases examining the handling and potential waiver of FLSA and NYLL claims. See i.e. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012) (discussing "the possibility of fraud or collusion."). In any event, conflict of interest, or even the appearance of conflict of interest, has always been grounds for disqualifying persons and entities from representing those as to whom they have a conflict of interest or the appearance of conflict of interest.

We have a troubling situation where both the Defendants and the union are very likely liable for unfair labor practices in failing to represent and provide Plaintiff with benefits – if as Defendants and the union claim, Plaintiff was covered by the CBA but did not receive benefits and representation he was entitled to. As such, we have a situation where there is legal conflict of interests between Plaintiff on one hand, and the employer/union on the other hand, who together may be subject to legal action by Plaintiff and who can currently be viewed as legal adversaries of Plaintiff. See i.e., *Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 103 S. Ct. 588, 74 L. Ed. 2d 402 (1983)("established that the employee's damages were caused initially by the Postal Service's unlawful discharge and were increased by the union's breach of its duty of fair representation, apportionment of the damages

40

was required."). See also, *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 242 (2d Cir. 2016)("For the reasons given above, we grant the petition for a writ of mandamus and instruct the district court to enter an order disqualifying Moscow and Baker Hostetler from representing Prevezon in this litigation."). We may also learn even more damning information in discovery that may deepen this conflict of interests, etc. As such, there is a real and actual conflict of interest, or at minimum, the appearance of a conflict of interests with regard to the claims in this action that requires denial of the motion. As such, the motion to compel arbitration must be denied and the district court's orders must be reversed.

In addition, we have a serious problem of employer overreaching which is the main reason in *Cheeks* for requiring judicial oversight of the handling and potential waiver. In other words, it strongly appears that the union is under the strong influence and control of the Defendants with respect to the claims in this action. Nonetheless, we have a situation here, where the union changed its position after outreach/overreach by Defendants. A reversal of the union position, by itself and in the context of this case, can lead a reasonable jury to conclude that the union will not "support the claim vigorously in arbitration." *Barrentine*, 450 U.S. at 742 – a specific and actual problem in this case. Even worse, any attempt by the union to reverse course based on the employer's outreach and overreach to the union, can lead a reasonable jury to conclude that the union is changing its position because of

41

the employer's overreaching and pressure, and/or that any change in position is designed to help the employer and itself, and harm the Plaintiff – contrary to the union's proper role and such a reasonable jury can conclude as a result that the union will not "support the claim vigorously in arbitration." *Barrentine*, 450 U.S. at 742 – or not at all, a specific and actual problem in this case. Because Defendants created the conflict and overreaching as set forth above, Defendants cannot press arbitration under the purported union agreement and cannot be heard to complain.

### 6. DEFENDANTS MOTION MUST ALSO BE DENIED BECAUSE EVEN IF THE CBA CONTROLS, IT REQUIRES MEDIATION AND NOT ARBITRATION AT THIS STAGE

We have set forth above Defendants failed to establish the required meetings of the minds and that the CBA does not require arbitration in this case in light of *Barrentine*, etc. However, even if the dispute resolution provision of the CBA controls, denial of Defendants' motion to compel arbitration is required. In this regard, the CBA states in relevant part as follows Article 15, Section 5 (c)(A49):

> Whenever the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute shall be submitted to mandatory mediation.

> No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator.

42

In other words, the very agreement relied upon by Defendants to compel arbitration specifically precludes arbitration at his stage and instead requires mediation. Once again, however, none of the purported agreements replied upon by Defendants including the CBA controls – especially given that they require Plaintiff to pay the cost of mediation and Plaintiff never agreed to any such thing and no one was authorized to bind the Plaintiff to any such thing. (See A115 ¶ 12).

The district court does not dispute that this material requirement of the CBA was never satisfied. However, the district court argued in relevant part as follows *Pena v. 220 E. 197 Realty LLC,* No. 20-CV-7039 (JPO), 2021 WL 3146031, (S.D.N.Y. July 23, 2021) (A164):

> Pena argues that Defendants cannot compel arbitration on the basis of this provision because the provision requires the parties to submit to mediation first. (Dkt. No. 18 at 21.) It is true that the multi-step grievance procedure outlined in the agreement requires mediation "before the matter is submitted to arbitration." (Dkt. No. 14–3 § 5(c).) But this does not preclude Defendants' motion. In Abdullayeva, for example, the Second Circuit directed the district court to compel arbitration where, as here, the provision in question allowed employees to submit individual claims to arbitration "following the conclusion of mediation." 928 F.3d at 224 (internal citation omitted).

However, although the mediation before arbitration requirement was present in *Abdullayeva*, there is no indication that the issue and argument here as to this provision was raised by the parties and addressed by the Court in *Abdullayeva*. See *Waters v. Churchill*, 511 U.S. 661, 678 (1994)("cases cannot be read as foreclosing an argument that they never dealt with"). Condition precedents are very common

43

in contracts and law, and it is well settled that such condition precedents must be satisfied before breach is found. Even assuming the grievance procedure in the CBA applies. The only reason there was no mediation through that provision is because of Defendants' illegal and wrongful conduct in not reporting Plaintiff and his employment to the union – thereby depriving Plaintiff of the union, the CBA and the grievance procedure in it, until we were far along in court, and it was too late. If the CBA must be followed, then it must be followed – not just convenient parts, and here, it is solely Defendants fault that the condition precedents were not satisfied and denial of Defendants motion to compel is warranted as a result.

### 7. ARBITRATION CANNOT BE COMPELLED IN THIS CASE UNDER THE EFFECTIVE VINDICATION DOCTRINE

The U.S. Supreme Court has held that arbitration should be denied under the effective vindication doctrine where the claims cannot be effectively vindicated in arbitration especially highly protected statutory claims like those in this case under the FLSA and NYLL. See *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 235 (2013).

In this regard, even if there was a valid waiver (there was not), arbitration cannot be compelled under the effective vindication doctrine recognized by the U.S. Supreme Court. It is not difficult to conclude that in light of all the negative effects as laid out above that flowed from Defendants' unlawful and egregious

44

failure to report Plaintiff and his employment to the union, Plaintiff cannot effectively vindicate his statutory rights and claims in arbitration. In fact, no one has explained or cited any precedent as to how we can go back in time and comply with the deadlines that have passed, the procedures that were missed, and provide all the protections and benefits under the CBA that should have been provided long ago. In other words, it is not clear at all, how we can put Humpty Dumpty back together again at this late stage, and allowing this case to move forward in court is the only legally proper and realistic option.

### 8. THE DISTRICT COURT HAD LEGAL AUTHORITY TO REVIEW AND DECIDE THE MOTION TO VACATE, INCLUDING UNDER FRCP § 60

This Court reviews an order denying a motion to vacate under FRCP § 60 for abuse of discretion and it is well settled that an error of law is an abuse of discretion. Here, the Court committed an error of law when it ruled that it did not have the legal authority under FRCP § 60(b) to hear and decide the motion to vacate. See i.e. *Adam Bruzzese, v. Merrick B. Garland*, No. 21-1448, 2022 WL 1669191, at 1 (2d Cir. May 26, 2022)("The denial of a Rule 60(b) motion is generally reviewed for abuse of discretion; denial of a Rule 60(b)(4) motion, however, is reviewed de novo. See Meilleur v. Strong, 682 F.3d 56, 64 (2d Cir. 2012); Cent. Vt. Pub. Serv. Corp. v. Herbert, 341 F.3d 186, 189 (2d Cir. 2003).").

In denying the motion to vacate, the district court stated in relevant part as follows (A287):

> Rule 60(b) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for" any of the reasons stated therein. Fed. R. Civ. P. 60(b) (emphasis added). "The standard test for whether a judgment is 'final' for Rule 60(b) purposes is whether the judgment is sufficiently 'final' to be appealed." In re Shengdatech, Inc. Secs. Litig., No. 11 Civ. 1918, 2015 WL 3422096, at *3 (S.D.N.Y. May 28, 2015) (alteration omitted) (collecting cases).

> The Court's July 23, 2021 Opinion and Order does not fall within the ambit of Rule 60(b). An order compelling arbitration and staying litigation is not a final judgment, order, or proceeding.

The Court's denial of the motion to vacate on these grounds was legally erroneous for several compelling reasons.

First, in the unique circumstances of this case, the arbitration order is sufficiently final for purposes of appeal under the union statutes as well as under the FAA – even though the FAA does not apply under Second Circuit precedent because arbitration was compelled under the union CBA – as explained under the jurisdiction section above.

Second, under the plain language of FRCP § 60, the word "final" controls the word "judgment" but not the word "order." For example, a statement that food will be first be given to "old men, women and children," when reasonably interpreted, is not limited to old men, old women and old children. The other interpretation would also violate the absurdity principle because it would allow

46

fraudulently obtained orders to control and destroy the integrity of the judicial process simply because they are deemed non-final.

Third, an order can be final for purposes of FRCP § 60, without necessarily being final for purposes of appeal. In fact, the need to review and vacate under FRCP § 60, is greatly higher in situations where correction of such orders and the damage they cause is not available through appeal. By way of reinforcement, orders such as those compelling arbitration unlike routine orders such as discovery orders, effectively ends the litigation because they stop proceedings in the court and sends the case outside of court – to a forum that does not have the power to change or correct judicial orders.

Fourth, if this court finds that the arbitration order cannot be reviewed and vacated under FRCP § 60, it should make clear that the district court has the general and inherent authority to review and vacate the arbitration order outside of FRCP § 60 and should do so – under its general and inherent powers, including but not limited to any ground set forth in FRCP § 60 – precisely because the order is not final – in the event the Court finds the order was not sufficiently final (the orders are final for purposes of appeal as explained above).

## VI.    CONCLUSION

Based on the foregoing, it is respectfully requested that this Honorable Court grant Plaintiff's appeal in its entirety and: 1) reverse the orders of the district court and deny Defendants' motion to compel arbitration in its entirety and allow this case to proceed in federal court without further delay; and 2) grant Plaintiff such other, further and different relief in his favor as this Court deems just and proper.

**Dated: Queens Village, New York**
**         August 26, 2022**

Respectfully submitted,

Abdul Hassan Law Group, PLLC

_Abdul Hassan_
Abdul K. Hassan, Esq. (AH6510)
215-28 Hillside Avenue, Queens Village, NY 11427
Tel: 718-740-1000, Fax: 718-740-2000
Email: abdul@abdulhassan.com

CERTIFICATION PURSUANT TO
Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 11,797 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2003, Times New Roman, Size 14.

Dated: August 26, 2022

_____
Abdul Hassan, Esq.

db