# 21-2031

## United States Court of Appeals
## for the Second Circuit



NELSON PENA,

*Plaintiff-Appellant,*

v.

220 EAST 197 REALTY LLC, and 63 WEST L.L.C.,

*Defendants-Respondents.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-RESPONDENTS

GOLDBERG AND WEINBERGER LLP
*Attorneys for Defendants-Respondents*
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595
*stuart575@aol.com*

DICK BAILEY SERVICE, Inc. · 1-800-531-2028 · dickbailey.com
[REPRODUCED ON RECYCLED PAPER]

# **TABLE OF CONTENTS**

***Page***

TABLE OF AUTHORITIES .................................................................... *iii*

JURISDICTIONAL STATEMENT ........................................................... 1

COUNTERSTATEMENT OF ISSUES PRESENTED ............................................ 8

COUNTERSTATEMENT OF THE NATURE OF THE CASE ............................. 9

    The Nature of the Case and Procedural History ............................... 9

    Statement of Facts ................................................................ 14

SUMMARY OF THE ARGUMENT .................................................... 23

ARGUMENT ................................................................................ 25

I.    THE COURT SHOULD DISMISS THE APPEAL FOR LACK OF JURISDICTION ......................................................................... 25

II.   EVEN IF THE APPEAL IS NOT DISMISSED, THE COURT SHOULD AFFIRM THE FIRST DECISION OF THE DISTRICT COURT .................................................................................... 26

    A. Arbitration of FLSA Disputes Under a CBA is Generally Favored ........ 26

    B. The District Court Properly Found the CBA's Arbitration Provision Applicable to Plaintiff-Appellant ............................... 28

    C. Defendants-Respondent's Inadvertent Failure to Report Plaintiff-Appellant to the Union Does Not Alter the Analysis ............................ 35

III.  EVEN IF THE APPEAL IS NOT DISMISSED, THE COURT SHOULD AFFIRM THE SECOND DECISION OF THE DISTRICT COURT .................................................................................... 39

CONCLUSION ............................................................................. 47

*i*

CERTIFICATION PURSUANT TO Fed R. App. P. 32(A)(7)(B) and (C) ............48

# TABLE OF AUTHORITIES

## *Cases*                                                     *Page(s)*

*14 Penn Plaza v. Pyett*,
   556 U.S. 247, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009) ....................................26

*Abdullayeva v. Attending Homecare Services LLC*,
   928 F.3d 218 (2d Cir. 2019) ..........................................................23, 27, 29, 31, 34

*Aboul v. Amsterdam Hospitality Group, LLC*,
   Nos. 21-cv-2432, 21-cv-2449, 2021 WL 3887594
   (S.D.N.Y. Aug. 31, 2021) ...........................................................................4, 36, 45

*Aboul v. Amsterdam Hospitality Group, LLC*,
   Nos. 21-cv-2432, 21-cv-2449, 2021 WL 7709524 (2d Cir. Nov. 24, 2021) ...4, 37

*Alfonso v. Maggies Paratransit Corp.*,
   203 F.Supp.3d 244, 251 (E.D.N.Y. 2016) .............................................................34

*Barrentine v. Arkansas-Best Freight System, Inc.*,
   450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) ..................................31, 34

*Bevills v. Merchants Fast Motor Lines, Inc.*,
   876 F. Supp. 129, 130 (N.D. Tex. 1995) ........................................................32, 37

*Catskill Development LLC v. Park Place Entertainment Corp.*,
   286 F.Supp.2d 309, 312 (S.D.N.Y. 2003) ............................................................39

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015) ..........................................................................31, 35

*Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers
   Union Local 812, Int'l Brotherhood of Teamsters*,
   242 F.3d 52, 54 (2d Cir. 2001) ..................................................................3, 23, 25

*Cohen v. UBS Fin. Servs., Inc.*,
   799 F.3d 174, 177 (2d Cir. 2015) .........................................................................26

*Datiz v. International Recovery Associates, Inc.*,
   No. 15-cv-3549, 2017 WL 59085, at *2 (E.D.N.Y. Jan. 4, 2017) .......................39

*Fleming v. N.Y. Univ.*,
    865 F.2d 478, 484 (2d Cir. 1989)...........................................................................42

*Francis v. Culley, 20-CV-3326 (PKC)*,
    2021 WL 3660719, at *12 (E.D.N.Y. Aug. 18, 2021)...................................41, 42

*Grace v. Bank Leumi Trust Co. of NY*,
    443 F.3d 180, 187 (2d Cir. 2006)....................................................................5, 39

*Green Tree Fin. Corp.-Ala v. Randolph*,
    531 U.S. 79, 86-87, 121 S.Ct. 513, 517, 148 L.Ed.2d 273 (2000) ........3, 4, 23, 25

*Greene v. Am. Bldg. Maint*,
    No. 12-cv-4899, 2013 WL 4647520, at *3 (E.D.N.Y. Aug. 28, 2013) ...............34

*Hartford Accident & Indemn. Co v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219, 226 (2d Cir. 2001)..........................................................................29

*Headley v. Tilghman*,
    53 F.3d 472, 476 (2d Cir. 1995)............................................................................38

*Holcomb v. TWR Express, Inc.*,
    11 A.D.3d 513 (N.Y. App. Div., 2d Dept. 2004)...................................................33

*In Re Palermo*,
    No. 08-cv-7421, 2011 WL 446209, at *2-3 (S.D.N.Y. Feb. 7, 2011) ...............39

*In re Shengdatech, Inc. Securities Litigation*,
    No. 11-cv-1918, 2015 WL 3422096, at *3 (S.D.N.Y. May 28, 2015) .................4

*ISC Holding AG v. Nobel Biocare Fin. AG*,
    688 F.3d 98, 109 (2d Cir. 2012)...........................................................................45

*Katz v. Cellco Partnership*,
    794 F.3d 341, 346 (2d Cir. 2015)........................................................3, 4, 23, 25

*Lawrence v. Sol G. Atlas Realty Co.*,
    841 F.3d 81, 83 (2d Cir. 2016)..............................................................................27

*Liberty Synergistics, Inc. v. Microflo, Ltd.*,
    718 F.3d 138, 146 (2d Cir. 2013)............................................................................6

*Maines Paper & Food Service Inc. v. Adel*,
    256 A.D.2d 760 (N.Y. App. Div., 3d Dept. 1998)...............................................33

*Matarese v. LeFevre*,
    801 F.2d 98, 106 (2d Cir.1986)..........................................................................42

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*,
    858 F.2d 825, 830 (2d Cir. 1988).......................................................................26

*Moss v. Rent-A-Center, Inc.*,
    No. 06-cv-3312, 2007 WL 2362207, at *5 (E.D.N.Y. Aug. 15, 2007) ..............33

*Moton v. Maplebear Inc.*,
    No. 15-cv-8879, 2017 WL 5515943, at *1 (S.D.N.Y. March 20 2017).............40

*Paddington Partners v. Bouchard*,
    34 F.3d 1132, 1142 (2d Cir. 1994)......................................................................39

*Pena v. 220 East Realty, LLC*,
    No. 20-cv-7039, 2021 WL 3146031 (S.D.N.Y. July 23, 2021)....................11, 37

*Pre-Paid Legal Servs., Inc. v. Cahill*,
    786 F.3d 1287, 1294 (10th Cir. 2015) ..................................................................5

*Prudential Ins. Co. of Am. v. Stella*,
    994 F. Supp. 308, 315 (E.D. Pa. 1998) ...............................................................37

*Quesnel v. Prudential Ins. Co.*,
    66 F.3d 8, 11 (1st Cir. 1995)...............................................................................37

*Ragone v. Atlantic Video at Manhattan Center*,
    595 F.3d 115, 122 (2d Cir. 2010)........................................................................33

*Rahm v. J. Hall, Ltd.*,
    No. 07-cv-0726, 2011 WL 1136465, at *5 (N.D.N.Y. Mar. 25, 2011 ...............37

*Reyes v. Gracefully, Inc.*,
    No. 17-cv-9328, 2018 WL 2209486 (S.D.N.Y. May 11, 2018).........................28

*Rodriguez v. Parts Authority, Inc.*,
    877 F.3d 122 (2d Cir. 2017).......................................................................*passim*

*Saunders v. Amoco Pipeline Co.*,
    927 F.2d 1154, 1156 (10th Cir. 1991) ...................................................37

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83, 93–102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)...........................1

*Steele v. Louisville & N.R. Co.*,
    323 U.S. 192, 200-01, 65 S.Ct. 226, 89 L.Ed. 173 (1944) .....................23, 32, 37

*Toure v. Thunder Lube Inc.*,
    No. 17-cv-657, 2019 WL 4805197 (E.D.N.Y. Sept. 30, 2019).........................28

*United States v. International Bhd. of Teamsters*,
    247 F.3d 370, 391 (2d Cir. 2001)...........................................................41

*United States v. Prevezon Holdings Ltd.*,
    839 F.3d 227, 237 (2d Cir. 2016)............................................................6

*Virgin Atl. Airways, Ltd. v. National Mediation Bd.*,
    956 F.2d 1245, 1255 (2d Cir. 1992).......................................................42

*White v. White Rose Food, a Div. of DiGiorgio Corp.*,
    237 F.3d 174, 182-83 (2d Cir. 2001) .....................................................32

*Will v. Hallock*,
    546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 236 (2006)...........................6

*Wright v. Universal Mar. Serv. Corp.*,
    525 U.S. 70, 79–82, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998)........................35

*Zambrano v. Strategic Delivery Solutions, LLC*,
    15-CV-8410, 2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) .........................28

### **Statutes/Regulations/Miscellaneous**

9 U.S.C. § 16(b) .........................................................................3, 23, 25

9 U.S.C. § 3 ...................................................................2, 3, 5, 8, 11, 28

9 U.S.C. § 4 ......................................................................2, 3, 8, 11, 28

9 U.S.C. §§ 1-16..........................................................1, 2, 4, 8, 23, 25

28 U.S.C. § 1291 .................................................................................*passim*

28 U.S.C. § 1292 ...........................................................................................2

28 U.S.C. § 1331 ...........................................................................................1

28 U.S.C. § 1337 ...........................................................................................1

28 U.S.C. § 1367 ...........................................................................................1

29 U.S.C. § 159(a) ...............................................................................32, 36

Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq .....................1

FRAP 4(a)(4)........................................................................................11, 13

FRCP 12(b)(6)...............................................................................1, 9, 14

FRCP 60 ...........................................................................................*passim*

Labor Management Relations Act of 1974 ........................................3, 15

## **<u>DISCLOSURE STATEMENT</u>**

Defendants-Respondents 220 East 197 Realty LLC and 63 West L.L.C. state that they are not controlled by a parent corporation nor does any publicly held corporation own 10% or more of their stocks.

## JURISDICTIONAL STATEMENT

Jurisdiction is a threshold matter that must exist before a court may decide the merits of an appeal. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Here, this honorable Court's appellate jurisdiction is limited to the review of a "final decision" of the district court. 28 U.S.C. § 1291.

Defendants-Respondents dispute that this Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291. This appeal relates to two orders from the district court that, alone or cumulatively, are not final for purposes of appeal and are specifically not appealable pursuant to section 16 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). Defendants-Respondents do not, however, dispute that the district court had subject matter jurisdiction over Plaintiff-Appellant's claims brought under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over his claims brought under New York State law pursuant to 28 U.S.C. § 1367.

The first order of the district court dated June 23, 2021 ("the first decision"), (A289-298) denied Defendants-Respondents' motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), granted Defendants-Respondents' motion to compel arbitration, and stayed Plaintiff-Appellant's action pending arbitration. In doing so, the district court based its

decision on the collective bargaining agreement ("CBA") that existed between Plaintiff-Appellant's employer and the Union that represents its employees. (A292-293.)

The second order of the district court dated May 3, 2022 ("the second decision"), (A286-288) denied Plaintiff-Appellant's motion to vacate the June 23, 2021, order pursuant to FRCP 60(b)(3) & (b)(6), specifically finding that its first decision was not a final order for purposes of FRCP 60(b).

Neither of the district court's orders can be considered final for purposes of 28 U.S.C. § 1291 and are, thus, not appealable. The first decision here simply stayed the action in favor of arbitration. The second decision specifically held that the district court's first decision was not a final order for purposes of FRCP 60(b) and, accordingly, denied Plaintiff-Appellant's motion to vacate the first decision. Thus, absent this appeal, Plaintiff-Appellant's case would simply be stayed in the district court and awaiting arbitration.

The district court's decisions stayed the action pursuant to 9 U.S.C. § 3 and compelled arbitration pursuant to 9 U.S.C. § 4. An order staying an action and compelling arbitration under the FAA is not an appealable final order, despite Plaintiff-Appellant's contentions to the contrary. (*see* P. Brief at 1-4.) Section 16 of the FAA specifically states as much: "Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order - (1)

granting a stay of any action under section 3 of this title; [or] (2) directing arbitration to proceed under section 4 of this title . . . ." 9 U.S.C. § 16(b)(1)-(2); *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 86-87, 121 S.Ct. 513, 517, 148 L.Ed.2d 273 (2000); *see Katz v. Cellco Partnership*, 794 F.3d 341, 346 (2d Cir. 2015) ("the FAA explicitly denies the right to an immediate appeal from an interlocutory order that compels arbitration or stays proceedings."); *Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers Union Local 812, Int'l Brotherhood of Teamsters*, 242 F.3d 52, 54 (2d Cir. 2001) ("'Interlocutory' orders directing arbitration under the FAA are not appealable as of right.") (citing 9 U.S.C. § 16(b)(2)).

Plaintiff-Appellant's reliance on *Coca-Cola* to argue that this Court does have jurisdiction over his appeal because the FAA does not apply is misplaced. (P. Brief at 1-2). *Coca-Cola* held only that the FAA does not apply in cases where a party brings a claim under section 301 of the Labor Management Relations Act ("LMRA") for breach of a contract between an employer and a labor organization, such as a collective bargaining agreement. 242 F.3d at 53. Plaintiff-Appellant's action, however, was not brought pursuant to section 301 of the LMRA for the alleged breach of the CBA but, instead, pursuant to the FLSA for the alleged breach of the statute. Accordingly, *Coca-Cola's* holding is inapposite to the case at bar.

In fact, Plaintiff-Appellant already knows this, as an action that he relied on in his brief (P. Brief at 20), *Aboul v. Amsterdam Hospitality Group, LLC*, Nos. 21-cv-2432, 21-cv-2449, 2021 WL 3887594 (S.D.N.Y. Aug. 31, 2021), was dismissed by this Court, *Aboul v. Amsterdam Hospitality Group, LLC*, Nos. 21-cv-2432, 21-cv-2449, 2021 WL 7709524 (2d Cir. Nov. 24, 2021), because it *sua sponte* determined that this Court lacked jurisdiction pursuant to section 16 of the FAA (i.e., not the LMRA that Plaintiff-Appellant now relies on). *Id.* at 1. This Court found that the district court in *Aboul* had not issued a final order when it stayed the underlying action and compelled arbitration due to an arbitration provision contained in a CBA. *Id.* (citing *Green Tree*, 531 U.S. at 86-87, 121 S.Ct. at 519; *Katz*, 794 F.3d at 746).

The district court also recognized that its first decision was not a final order for purposes of FRCP 60(b) and, accordingly, denied Plaintiff-Appellant's motion to vacate it. (A286-288.) In so doing, Defendants-Respondents respectfully suggest that the district court correctly relied upon "the prevailing rule in this Circuit and elsewhere . . . that an order is final for purposes of Rule 60(b) when it is appealable." *In re Shengdatech, Inc. Securities Litigation*, No. 11-cv-1918, 2015 WL 3422096, at *3 (S.D.N.Y. May 28, 2015) (collecting cases). Should this Court agree, then it should find that it lacks jurisdiction over Plaintiff-Appellant's appeal from the first decision because it will also find that the first decision was not a final order for purposes of 28 U.S.C. § 1291 and that section 16 of the FAA precludes this appeal.

As to the second decision on appeal, it is similarly not final for purposes of 28 U.S.C. § 1291 because, in the specific circumstances of this case, it merely confirmed its first decision without addressing the substantive grounds for Plaintiff-Appellant's motion to vacate it. In other words, the result of the second decision was simply that the case below remained stayed pending arbitration and future proceedings in the district court. Even if it were an appealable final order, "[FRCP]60(b) decisions by district courts are accorded deference. [The Second Circuit] reverse[s] only where there has been an abuse of discretion." *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 187 (2d Cir. 2006). As has been argued above and will be argued below, the district court did not abuse its discretion in finding that its first decision was not a "final order" for purposes of FRCP 60(b).

Plaintiff-Appellant's alternative arguments (*see* P. Brief at 3-4) as to why this Court has jurisdiction to hear this appeal are simply unavailing. Plaintiff-Appellant relies on an out-of-circuit decision, *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) to suggest that section 3 of the FAA does not require a stay where the applicant for the stay is in default. (P. Brief at 3.) While that may be a true legal premise, it does not confer an independent basis for jurisdiction on this Court (it is not even a statement or legal premise addressed to appellate jurisdiction). It is simply an issue that was already considered and decided upon below by the

5

district court and ultimately would be subsumed into this appeal should this Court have jurisdiction to hear it, which it respectfully does not.

The collateral order doctrine also does not apply in this case. (P. Brief at 3.) "'The requirements for collateral order appeal have been distilled down to three conditions: that an order (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.'" *Liberty Synergistics, Inc. v. Microflo, Ltd.*, 718 F.3d 138, 146 (2d Cir. 2013) (quoting *Will v. Hallock*, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 236 (2006)). Plaintiff-Appellant makes no attempt to demonstrate how any of these conditions have been satisfied. Just like any other case stayed in the district court and sent to arbitration under the FAA, Plaintiff-Appellant here will retain all appellate rights he would normally have following the conclusion of arbitration and proceedings in the district court.

Finally, the Court should not treat the appeal as "a writ for mandamus" as suggested by Plaintiff-Appellant. (P. Brief at 4.) This "Court issues a writ only in exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 237 (2d Cir. 2016) (internal quotation marks omitted). "A district court abuses its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or if it has rendered a decision that cannot be located

within the range of permissible decisions. [The Second Circuit] will issue the writ only if a district court committed a clear and indisputable abuse of its discretion in one of these ways." *Id.* Plaintiff-Appellant has made no showing or even a suggestion as to how the district court's decision to stay the underlying proceedings and compel arbitration under a CBA, as has been done many times by many courts under the exact same circumstances as this case (as will be shown below), amounted to an abuse of discretion sufficient to justify the issuance of a writ of mandamus.

Accordingly, it is respectfully suggested that this Court lacks jurisdiction to hear this appeal and the appeal should be dismissed outright.

## <u>COUNTERSTATEMENT OF ISSUES PRESENTED</u>

1. Whether this Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291 where this Court and others have held numerous times that section 16 of the FAA specifically precludes an appeal from an interlocutory order staying an action under section 3 of the FAA and compelling arbitration under section 4 of the FAA.

2. Whether the district court properly determined in its first decision that the CBA at issue in this case covered Plaintiff-Appellant and, accordingly, properly determined that it must stay the action and compel arbitration pursuant to the FAA, regardless of whether Plaintiff was aware he was covered by the CBA or whether he was reported to the union by Defendants-Respondents at the time the CBA became effective.

3. Whether the district court properly determined in its second decision that its first decision was not a final order for purposes of Rule 60(b) and, accordingly, properly denied Plaintiff-Appellant's motion to vacate its first decision.

# COUNTERSTATEMENT OF THE NATURE OF THE CASE

## *The Nature of the Case and Procedural History*

Plaintiff-Appellant initiated an action in the United States District Court for the Southern District of New York on August 30, 2020. (A7.) The assigned trial judge was the Honorable J. Paul Oetken, United States District Judge. (A1.)

Plaintiff-Appellant's Complaint alleged that he was jointly employed by Defendants-Respondents and that they had violated the FLSA and New York Labor Law by failing to pay him overtime wages and minimum wages as required by law. (A12-13.) Plaintiff-Appellant also alleged an entitlement to statutory damages under the New York Labor Law for alleged violations of its record-keeping provisions. (A14.) Plaintiff-Appellant also alleged that he was impermissibly terminated under the anti-retaliation provisions of the FLSA and NYLL. (A15-16.)

On October 26, 2020, after having received extensions of time to file an answer or otherwise respond to the complaint (A2-3), Defendants-Respondents filed a motion to dismiss the Complaint pursuant to FRCP 12(b)(6) in favor of compelling arbitration, or for such other and further relief that would be just and proper (A19). The basis for the motion was, *inter alia*, that Plaintiff-Appellant was covered by the terms of a CBA between Defendant-Respondent 63 West L.L.C. and Local 1931, Eastern States Joint Board, International Union of Allied, Novelty and Production Workers ("the Union") covering the period June 1, 2019, to May 21, 2022 (A42-57),

9

which included a grievance procedure for specified employment-related disputes, including all wage disputes under the FLSA and New York Labor Law, that would ultimately culminate in the requirement for a covered employee to proceed to arbitration either through the union or on their own behalf (A46-50.)

Defendants-Respondents also included other grounds for their motion, including that Plaintiff-Appellant had also signed two individual agreements to arbitrate any employment-related disputes with Defendants-Respondents (A36-40, A58-61); however, all parties ultimately agreed that collective agreements trump individualized agreements such that the district court based its decision solely on the arbitration provisions contained in the CBA (A292). Defendants-Respondents also raised two other grounds for the dismissal of the Complaint, including that Plaintiff-Appellant had signed a pre-litigation general release of claims pre-dating a certain date, and that Plaintiff-Appellant did not sufficiently allege a cause of action for retaliation under the FLSA and NYLL (A76-78, A83-87); however, the district court did not need to consider these grounds because of its ultimate determination.

On February 23, 2021, Plaintiff-Appellant opposed the motion on various grounds (A89, A95-111), all of which were mainly supported by his contention that he was not aware that his employment was covered by the terms of a CBA (A113-116). Defendants-Respondents filed a reply memorandum of law in further support of the motion on March 8, 2021. (A144-158.)

On July 23, 2021, the district court determined the motion by denying Defendants-Respondents' motion to dismiss, compelling arbitration pursuant to section 4 of the FAA, and staying the action pursuant to section 3 of the FAA. (A290-298.) The district court's decision can be found at *Pena v. 220 East Realty, LLC*, No. 20-cv-7039, 2021 WL 3146031 (S.D.N.Y. July 23, 2021) as well as in the Appendix (A290-298).

On August 19, 2021, Plaintiff-Appellant filed a Notice of Appeal of the district court's decision (A204-205) and a motion in the district court to vacate the decision pursuant to FRCP 60(b)(3) & (b)(6) (A168-169). On September 3, 2021, this Court issued an Order staying the appeal pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure ("FRAP") based upon the filing of the motion pursuant to FRCP 60(b). (Docket Entry 13.)

The grounds for Plaintiff-Appellant's motion to vacate the district court's July 23, 2021, decision included the allegation from Plaintiff-Appellant's counsel that he had communicated with the Union for the purpose of investigating Plaintiff-Appellant's contention that he was not covered by the CBA and was told by the Vice President of the Union that Plaintiff-Appellant was not a member of the Union covered by the CBA. (A170-74.) Plaintiff-Appellant argued in his motion that, based upon the information his counsel allegedly received from the Vice President of the Union, that Defendants-Respondents had committed a fraud on the district court by

11

arguing that the CBA covered his employment, sufficient to justify vacatur of the prior decision pursuant to FRCP 60(b)(3) & (b)(6). (A198-203.) Notwithstanding the argument in support of a finding of "fraud" and "misrepresentation," Plaintiff-Appellant produced no evidence that Defendants-Respondents engaged in any impropriety.

Defendants-Respondents opposed the motion for vacatur and submitted contrary evidence from the same Vice President of the Union and a member of their human resources team that an administrative oversight led to Plaintiff-Appellant not being reported to the Union, but that Defendants-Respondents would work with the Union to ensure that Plaintiff-Appellant received any benefits he would be entitled to as a union member. (A226-228.) In fact, the Vice President of the Union, upon being fully informed, retracted his prior email to Plaintiff-Appellant's counsel, confirmed that Plaintiff-Appellant was covered by the CBA, and stated that the Union would be seeking any loss of benefits on his behalf. (A226.) Notwithstanding any evidentiary confusion on this issue caused by the Vice President of the Union's communications with counsel, Defendants-Respondents argued that Plaintiff-Appellant's motion should be denied because the district court had not issued a final order that could be vacated pursuant to FRCP 60(b) (A250-52) and, in any event, the motion should fail on substantive grounds because the district court properly determined that it would not matter if Plaintiff-Appellant was a member of the Union

12

in order to be considered an employee covered by the CBA and subject to the arbitration provision contained in the CBA (A253-56).

Plaintiff-Appellant filed a reply in further support of his FRCP 60(b) motion on September 9, 2021. (A260-272.) On May 3, 2022, the district court determined the motion, finding the motion was not procedurally proper in that its first decision was not a final order for purposes of FRCP 60(b), denying the motion to vacate, and accordingly not reaching the substantive grounds for the motion. (A287-288.) A review of the WestLaw electronic database does not show that this decision has been published yet, but it is available in the Appendix. (A287-288.)

On May 11, 2022, Plaintiff-Appellant filed an Amended Notice of Appeal incorporating the second decision into his appeal. (A284-285.) On May 13, 2022, this Court lifted the FRAP 4(a)(4) stay of the appeal. (Docket Entry 29.) On August 26, 2022, Plaintiff-Appellant filed the Appendix and his Appellate Brief (Docket Entries 47-48), to which Defendants-Respondents respond herein in opposition.

### *Statement of Facts*

Despite Plaintiff-Appellant's continual allegations of Defendants-Respondents' fraud and misstatements and impropriety, none of which have any basis in the record, this case is very straightforward.

Plaintiff-Appellant worked for Defendants-Respondents 220 East and 63 West and both Defendants-Respondents were listed on Plaintiff-Appellant's paystubs. (A9 at ¶ 11.)[1,2] According to the Complaint, Defendants-Respondents "jointly controlled the employment of Plaintiff and was [sic] responsible for hiring, firing, scheduling, controlling, managing, supervising, and record-keeping as to Plaintiff's employment, among other employment functions which they performed as to Plaintiff." (A9 at ¶ 12.)

Defendants-Respondents are in the business of hotel management and ownership within the New York tri-state area. (A9 at ¶ 14.) Plaintiff-Appellant was employed by Defendants-Respondents as a "handyman/laborer" beginning in or around 2014. (A9 at ¶¶ 16-17.) Plaintiff-Appellant asserts that he worked about 43-

---

[1] Because of the procedural posture of the case (i.e., a motion pursuant to FRCP 12(b)(6)), the allegations contained in Plaintiff-Appellant's Complaint were and are accepted as true for purposes of the underlying motion and this appeal only.

[2] Due to the issues to be raised on appeal, Defendants-Respondents only state those facts which they believe are necessary for this Court's determination of the appeal as limited by the grounds relied upon by the district court in its two decisions; however, Defendants-Respondents respectfully point the Court to its Statement of Relevant Facts on their original motion (A69-72) for a more detailed description that contains additional information not contained herein.

14

52 hours per week. (A10 at ¶ 20.) Plaintiff-Appellate contends that he never received a bona fide meal break, and that Defendants-Respondents automatically deducted 30 minutes each day for his meal break. (A10 at ¶ 19.) Prior to August 2020, Defendants-Respondents mailed Plaintiff-Appellant several checks. (A15 at ¶ 59.) After Plaintiff-Appellant cashed the checks, he was accused by Defendants-Respondents of improperly cashing them. (A15 at ¶ 59.)

Plaintiff-Appellant was terminated on August 14, 2020. (A15 at ¶ 59.)

In his Complaint, Plaintiff-Appellant asserted claims for: (1) unpaid overtime under the FLSA; (2) unpaid overtime under the NYLL; (3) various statutory violations under the NYLL, such as alleged failure to provide Plaintiff with a wage notice or wage statements; and, (4) retaliation under the FLSA and NYLL. (A12-16 at ¶¶ 38-62.)

In 2019, Defendant-Respondent 63 West entered into the CBA with the Union, covering the period of June 1, 2019, to May 31, 2022. (A42-57, generally.) Article 2 of the CBA states as follows:

> The Employer agrees to and does hereby recognize the Union as the sole and exclusive bargaining agent for all full and regular part time employees including front desk, bell-person, engineers and porters and reception, excluding clerical and office employees, sales employees, managers, guards, professional employees and supervisors as defined in the Labor Management Relations Act of 1974.

(A43.)

Section 1 of Article 15 of the CBA sets forth a four-step grievance procedure covering any employment-related disputes. (A47-48.) Should the employment dispute not be resolved, the CBA states that the aggrieved party may submit the dispute to arbitration, which decision is "final and binding." (A47.) Further, Section 5 of Article 15 of the CBA provides:

> The parties agree that a goal of this Agreement is ensure compliance with ***all federal state, and local wage hour law***. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour and wage parity statutes and regulations, all claims brought by either the Union or employee ***all claims for wages and for a violation of wage laws, under the Fair Labor Standards Act, the New York State Wage Payment Law, and the New York Wage State Wage and Hour Law (including New York Department of Labor and Workforce Development regulations and wage orders), or any similar laws (federal, state or local) or regulations related to the payment of wages (collectively referred to as "Covered Statute") shall be subject to the grievance and arbitration procedure described below as the sole and exclusive remedy of the employee for these claims that the employee has or ever(sic) had***. Notwithstanding the time limits to file a grievance under Article 15 of this Agreement, the statute of limitations to file a grievance concerning a dispute involving a claim for wages under a law or regulation shall be consistent with the applicable statutory statute of limitations and shall be submitted in writing to the Company. The Arbitrator shall apply appropriate law in rendering decisions based on claims under the Covered Statutes, including awarding statutory remedies and penalties.

(A48-49 (emphasis added).)

Plaintiff-Appellant asserted in his Declaration opposing Defendants-Respondents' motion to dismiss that he speaks Spanish and does not read or write in English. (A113 at ¶ 4.) Referring to the CBA at issue, Plaintiff-Appellant asserted

that he does not believe he ever received it before his action was filed. (A114 at ¶ 9.) Plaintiff-Appellant further asserted that he did not know that he was in a union while working for Defendants-Respondents, was never told he was in a union, and was never told about the existence of the CBA. (A115 at ¶ 10.) Plaintiff-Appellant alleged that before he filed his action, he did not know what arbitration was and never agreed to arbitrate anything with Defendants-Respondents. (A115 at ¶ 11.) Notwithstanding this allegation, Defendants-Respondents submitted two individualized arbitration agreements between Defendants-Respondents and Plaintiff-Appellant, both signed by him. (A36-40; A58-61.) Plaintiff-Appellant alleged that, as to those documents, he does not believe that he ever received them or signed them. (A114 at ¶¶ 6-7.) Because of the district court's determination that is the subject of this appeal, which relied exclusively on the CBA, these two individualized arbitration agreements are largely irrelevant unless the Court should find that it can affirm on an alternative ground contained in the record.

After the first decision of the district court staying the action and compelling arbitration, Plaintiff-Appellant's counsel, on August 11, 2021, allegedly called the Union. (A171 at ¶ 7.) Counsel allegedly spoke with Nora Roa who then allegedly searched for Plaintiff-Appellant in the Union database using his social security number but was unable to locate him as a current or former member of the Union.

(A171 at ¶ 7.) Plaintiff-Appellant's counsel then allegedly sent an email to Ms. Roa as follows:

> Nora,
>
> Thank you for speaking with me today. I am writing to confirm that the social security number (redacted), for Nelson Pena and which you used to try to locate him in your database of former and current union members today but couldn't is correct - a copy of his W-2 containing the social security number along with his name, address and the name of his employer is attached. I am also attaching a purported Collective Bargaining Agreement between West 63 LLC and your union.
>
> Once again, please do another check for me and verify whether Mr. Nelson Pena was ever a member of Amalgamated Local 1931 Easterna [sic] States Joint Board ALF-CIO - the name set forth in the attached CBA, or any predecessor or successor union. Mr. Pena worked at the building in the Bronx from around 2014 to around August 2020 when his employment ended.
>
> As I explained to you on the phone, my firm represents Mr. Pena in a wage related lawsuit and the defendant is claiming that Mr. Pena should not be able to pursue his case in court and has to pursue it through your union because he was a member of your union. However, the plaintiff does not have any recollection of being in a union and I have not seen any documents in the case that he was actually a member of your union. As such, I reached out to you and I am reaching out again to verify that he was not a member of any union and if so, the dates of membership.
>
> Time is of the essence, so I would greatly appreciate it if you can verify and get back to me today (August 11, 2021) or tomorrow (August 12, 2021).
>
> Please let me know if you have any questions.
>
> Yours truly,
> Abdul K. Hassan, Esq.

(A172 at ¶ 8.) On August 13, 2021, Plaintiff-Appellant's counsel allegedly spoke

with Charlie Clemenza after he called Plaintiff-Appellant's counsel's office. (A173

at ¶ 9.) Mr. Clemenza allegedly identified himself as the Vice President of the Union

and stated that he was calling because Ms. Roa forwarded him Plaintiff-Appellant's

counsel's August 11, 2021, email to Ms. Roa. (A173 at ¶ 9.) Mr. Clemenza allegedly

"once again verified" that Plaintiff-Appellant was not a current or former member

of the Union and was not covered by the CBA. (A173 at ¶ 9.)

On August 15, 2021, Plaintiff-Appellant's counsel sent Mr. Clemenza the

following email:

> Dear Mr. Clemenza/Ms. Roa:
>
> Thanks very much for your time and assistance. By way of further clarification/confirmation, is it correct to say that in addition to not being a member of your union, Mr. Nelson Pena was not covered by the CBA I emailed you, was not represented by your union (Local 1931), and that the provisions of the CBA including the mediation/arbitration provisions in the CBA, do not apply to Mr. Pena? I did see that the CBA says that the union covers the majority (but not all) employees at the building and that the CBA specifically excludes several categories of workers, but I wanted to go the extra mile and confirm and clarify specifically as to Mr. Nelson Pena (SSN: [redacted]).
>
> Abdul K. Hassan, Esq.

(A173 at ¶ 10.) On August 16, 2021, Plaintiff-Appellant's counsel allegedly received

an email from Mr. Clemenza that said "That is correct. Mr. Pena is not a dues paying

Local 1931 Union member and is not covered by the local 1931 CBA." (A173 at ¶

11.) Plaintiff-Appellant based his motion to vacate the district court's decision pursuant to FRCP 60(b) solely on this email exchange. (A198-203.)

After seeing this email exchange contained in Plaintiff-Appellant's motion papers, counsel for Defendants-Respondents also corresponded with Mr. Clemenza by email. (A226.) Defendants-Respondents' counsel explained that it was discovered that Plaintiff-Appellant was not reported to the Union due to an oversight and inquired how it could be that the Union would take the position that is reflected in Mr. Clemenza's emails with Plaintiff-Appellant's counsel given that Plaintiff-Appellant worked in a profession covered by Section 2 of the CBA regardless of not having been reported to the Union. (A226.)

On September 1, 2021, Mr. Clemenza emailed Defendants-Respondents' counsel as follows:

Dear Mr. Weinberger,

Mr. Pena was not reported to the Union therefore [sic] did not appear in the Union data base [sic], however I was mistaken when I stated that Mr. Pena was not covered by the Collective Bargaining Agreement.

I would like to retract my e-mail response to Mr. Pena's attorney, with sincere apologies to all involved.

Mr. Pena did in fact work for 63 West as an Engineer which is a classification covered and recognized under the CBA.

The fact that Mr. Pena was an oversight by the company and not reported to the Union was the bases [sic] for the confusion on my part and lead to the inaccurate email to Mr. Pena's Attorney.

20

Mr. Pena is covered by the Collective Bargaining Agreement and the Union will be seeking any loses [sic] of benefits etc. related to Mr. Pena.

Sincerely,

Charlie Clemenza
ESJB

(A226.) Additionally, Michele Disanto, who is responsible for providing human resources services to Defendants-Respondents (A227 at ¶ 1) submitted a Declaration in which she stated that Plaintiff-Appellant was not reported to the Union due to an administrative oversight, but that if Plaintiff-Appellant is owed any compensation or monies under the CBA, Defendant-Respondent 63 West L.L.C. would work with the Union to ensure that Plaintiff-Appellant receives all that he is entitled to (A228 at ¶ 4).

The various email exchanges highlighted above were not relied upon by the district court in determining Plaintiff-Appellant's motion to vacate pursuant to FRCP 60(b) but are included due to the position Plaintiff-Appellant takes on appeal.

It should be noted that Plaintiff-Appellant references additional emails in the appellate brief that were allegedly sent to the Union after the district court decisions, to which he allegedly received no response, and information he alleges occurred throughout the summer of 2022 relating to the CAMP conference generally conducted in this circuit, including a plethora of editorial language and argument, none of which is contained in the record. (P. Brief at 10-13) ("despite an apparent

coordinated representation to the district court by the Union and defendants") ("they have done absolutely nothing in this regard") ("they have still not provided Plaintiff with any benefits whatsoever under the CBA") ("It appears that these material representations to the district court by the union and the Defendants were also false and meant to protect their interest in order to obtain a favorable judicial outcome") ("It is highly unusual for a union that is supposed to be representing an employee to refuse to communicate with the employee or that employee's counsel or to even respond to the Court") ("it appears at this stage that the union is taking the view that it is united in interest with Defendants as both may be legally liable to the Plaintiff") ("that [the Union] as a legal adversary of the Plaintiff at this stage, it cannot represent the Plaintiff in any way"). Defendants-Respondents believe that the Court should disregard this "evidence" not contained in the record, as well as Plaintiff-Appellant's editorial language and argument quoted above at pages 10-13 of his appellate brief.

For the reasons argued below, the Court should dismiss this appeal on jurisdictional grounds or otherwise affirm.

## SUMMARY OF THE ARGUMENT

First, the appeal should be dismissed because it is respectfully suggested that this Court does not have jurisdiction to hear it under 28 U.S.C. § 1291 and because any appeal of an order compelling arbitration and staying an action in district court under the FAA is specifically precluded by section 16 of the FAA. 9 U.S.C. § 16(b)(1)-(2); *Green Tree*, 531 U.S. at 86-87, 121 S.Ct. at 517; *Katz*, 794 F.3d at 346; *Coca-Cola*, 242 F.3d at 54.

Second, even should the Court find it has jurisdiction, it should affirm the first decision of the district court staying the action and compelling arbitration because the district court properly found that the CBA, and its arbitration provision, governed the terms and conditions of Plaintiff-Appellant's employment regardless of whether he was aware of it, regardless of whether he was even a member of the Union, and regardless of his desire to the contrary. *Abdullayeva v. Attending Homecare Services LLC*, 928 F.3d 218 (2d Cir. 2019) (finding mandatory arbitration of FLSA claims in union collective bargaining agreement are permissible); *Rodriguez v. Parts Authority, Inc.*, 877 F.3d 122 (2d Cir. 2017) (affirming district court decision dismissing complaint and compelling arbitration, noting "we conclude that FLSA claims are arbitrable" and specifically finding that many of the same arguments Plaintiff-Appellant makes on this appeal are without merit); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 200-01, 65 S.Ct. 226, 89 L.Ed. 173 (1944) ("The labor

organization chosen to be the representative of the craft or class of employees is thus chosen to represent all of its members, regardless of their union affiliations or want of them.").

Third, should the Court find it has jurisdiction, it should affirm the second decision of the district court finding that it did not abuse its discretion in determining that its first decision was not a final order for purposes of FRCP 60(b) or, alternatively, even if it was a final order, that it had no basis upon which to vacate its first decision.

## **ARGUMENT**

**I.     THE COURT SHOULD DISMISS THE
        APPEAL FOR LACK OF JURISDICTION**

For all the reasons set forth in the Jurisdictional Statement, *supra* at 1-7, the appeal should be dismissed because it is respectfully suggested that this Court does not have jurisdiction to hear it under 28 U.S.C. § 1291 and because any appeal of an order compelling arbitration and staying an action in district court under the FAA is specifically precluded by section 16 of the FAA. 9 U.S.C. § 16(b)(1)-(2); *Green Tree*, 531 U.S. at 86-87, 121 S.Ct. at 517; *Katz*, 794 F.3d at 346; *Coca-Cola*, 242 F.3d at 54.

## II.     EVEN IF THE APPEAL IS NOT DISMISSED, THE COURT SHOULD AFFIRM THE FIRST DECISION OF THE DISTRICT COURT

Even should this Court find it has jurisdiction to hear this appeal, it should affirm the July 23, 2021, Opinion and Order. (A289-298.) This decision properly denied Defendant-Respondent's motion to dismiss, and instead stayed Plaintiff-Appellant's action pending a compelled arbitration under the grievance procedure contained in the CBA signed by Defendants-Respondents and the Union as the exclusive bargaining agent for their employees, including Plaintiff-Appellant. Should the Court reach this issue rather than dismissing the appeal for the lack of jurisdiction, the Court reviews *de novo* a district court's grant of a motion to compel arbitration. *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 177 (2d Cir. 2015).

### A.     *Arbitration of FLSA Disputes Under a CBA is Generally Favored*

The FAA espouses "a liberal federal policy favoring arbitration agreements," which reflects Congress's "recognition of the desirability of arbitration as an alternative to the complications of litigation." *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988) (internal quotation marks and citation omitted). This policy is reflected in the Supreme Court's decision in *14 Penn Plaza v. Pyett*, 556 U.S. 247, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009), which held that "[t]he [National Labor Relations Act]

26

provide[s] the Union and [the Employer] with statutory authority to collectively bargain for arbitration of discrimination claims." *Id.* at 260.

The Court held that a union "enjoys broad authority . . . in the negotiation and administration of [the] collective bargaining agreement [citation omitted]," *id.* at 255-256, and thus could agree in a collective bargaining agreement that employees could be compelled to arbitrate their age discrimination claims as the exclusive remedy, precluding a lawsuit in court on the same claims, *id.* at 274. The Court further found that the collective bargaining agreement gave the arbitrator authority to resolve discrimination claims and that the "collective bargaining provisions expressly covers both statutory and contractual discrimination claims [footnote omitted]." *Id.* at 264.

Following the Supreme Court's ruling in *Pyett*, courts in the Second Circuit have repeatedly held that FLSA and New York Labor Law ("NYLL") claims may also be subject to mandatory arbitration clauses contained in collective bargaining agreements negotiated between a union and an employer. *See Abdullayeva*, 928 F.3d at 223 ("we have no trouble concluding both that the Union agreed to mandatory arbitration in the CBA on behalf of its members and that the arbitration agreement at issue clearly and unmistakably encompasses [plaintiff's] FLSA and NYLL claims."); *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016) ("claims under . . . the FLSA, and NYLL may be subject to arbitration.").

Thus, there is no doubt in this circuit that arbitration clauses contained in a CBA may ultimately result in an employee being compelled to arbitrate the employee's claim under section 4 of the FAA and the stay of the action pending arbitration under section 3 of the FAA. *See Rodriguez*, 877 F.3d at 123 (affirming district court decision dismissing complaint and compelling arbitration, noting "we conclude that FLSA claims are arbitrable."); *Reyes v. Gracefully, Inc.*, No. 17-cv-9328, 2018 WL 2209486 (S.D.N.Y. May 11, 2018) (granting motion to dismiss and compel arbitration, noting that "the Second Circuit has held that nothing in the FLSA evinces an intent from Congress to exempt claims brought under it from the broad policies of the FAA."); *Toure v. Thunder Lube Inc.*, No. 17-cv-657, 2019 WL 4805197 (E.D.N.Y. Sept. 30, 2019) (compelling arbitration of FLSA and NYLL claims); *Zambrano v. Strategic Delivery Solutions, LLC*, 15-CV-8410, 2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) ("courts in this District have consistently found FLSA and NYLL claims to be arbitrable."). Plaintiff-Appellant's counsel knows this, as he represented the plaintiffs in *Rodriguez* and *Toure*, yet nevertheless argues against compelled arbitration in this action for Plaintiff-Appellant, which will be addressed below.

### B. The District Court Properly Found the CBA's Arbitration Provision Applicable to Plaintiff-Appellant

In the Second Circuit, it is well settled that a court considering whether to compel arbitration pursuant to a purported arbitration agreement must decide: (1)

whether there exists a valid agreement to arbitrate at all under the contract in question; and if so (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement. *Hartford Accident & Indemn. Co v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001). In determining this question, the district court was required to apply a standard similar to that employed on a motion for summary judgment, drawing all inferences in favor of Plaintiff-Appellant as the non-movant. *Abdullayeva*, 928 F.3d at 221.

Here, the first question is easily satisfied for the reasons set forth in Point I(A), *supra*. There is no question in this circuit that an arbitration provision contained in a CBA is a valid agreement to arbitrate. Secondly, the district court properly determined that Plaintiff-Appellant's particular dispute falls within the scope of the arbitration agreement. In this case, the language in the CBA is clear and unmistakable. Section 5 of Article 15 of the CBA provides:

> The parties agree that a goal of this Agreement is ensure compliance with ***all federal state, and local wage hour law***. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal, state, and local wage-hour and wage parity statutes and regulations, all claims brought by either the Union or employee ***all claims for wages and for a violation of wage laws, under the Fair Labor Standards Act, the New York State Wage Payment Law, and the New York Wage State Wage and Hour Law (including New York Department of Labor and Workforce Development regulations and wage orders), or any similar laws (federal, state or local) or regulations related to the payment of wages (collectively referred to as "Covered Statute") shall be subject to the grievance and arbitration procedure described below as the sole and exclusive remedy of the employee for these claims that the employee has or***

*ever(sic) had*. Notwithstanding the time limits to file a grievance under Article 15 of this Agreement, the statute of limitations to file a grievance concerning a dispute involving a claim for wages under a law or regulation shall be consistent with the applicable statutory statute of limitations and shall be submitted in writing to the Company. The Arbitrator shall apply appropriate law in rendering decisions based on claims under the Covered Statutes, including awarding statutory remedies and penalties.

(A48-49 (emphasis added).)

There can be no doubt that the CBA constitutes a clear agreement to bind Plaintiff-Appellant to arbitration as the forum to resolve all the claims that he asserts in his Complaint. In this action, he is seeking to assert claims for the alleged non-payment, or underpayment of wages, including overtime, as well as other statutory violations of the FLSA and NYLL. He also asserts retaliation claims under the FLSA and NYLL. All those claims are indisputably covered by the grievance and arbitration procedure set forth in Article 15 of the CBA. Indeed, Section 5 of Article 15 of the CBA explicitly states that all claims or disputes regarding wages or claims arising out of federal, state or local laws involving wages are subject to the grievance and arbitration procedure set forth in the CBA. The language covers all wage claims and disputes, both individual and statutory (whether federal, state and local) that arise out of the employee's employment. This language was negotiated to "ensure compliance with *all federal state, and local wage hour law*." (A 48 (emphasis added).) The language of the CBA cannot be any clearer. All wage claims, including all claims brought pursuant to the FLSA and NYLL, must be arbitrated as Plaintiff-

Appellant's exclusive remedy. The language used in the CBA, on its face, "simply does not allow an employee to choose to proceed to a judicial forum." *Abdullayeva*, 928 F.3d at 224.

Notwithstanding that the CBA could not be any clearer, Plaintiff-Appellant offered several arguments against compelled arbitration in this case, much the same as he does in his appellate brief now (P. Brief at Points V(2)-(7)), such as: (1) he was not aware he was covered by the CBA and had never seen it before; (2) that he speaks Spanish and has trouble reading and writing in English; (3) that arbitration could prove to be prohibitively costly; (4) that he cannot waive his right to a jury trial without a knowing waiver; (5) that arbitration does not provide for the effective vindication of his rights; (6) the grievance procedure would have required him to submit to mediation first; (7) that this Court's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) somehow precludes arbitration; and, (8) that the Supreme Court's decision in *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) somehow precludes arbitration. The district court properly addressed each of these arguments in detail already, as has this Court in previous cases with Plaintiff-Appellant's counsel. *See Rodriguez*, 877 F.3d 122.

While each of these arguments were considered and decided upon by the district court, Defendants-Respondents focus on the main thrust of Plaintiff-

Appellant's contentions below and on appeal, which was that he was never reported to the Union by Defendants-Respondents, was allegedly never told he was in a union, and was allegedly never provided a copy of the CBA. The administrative oversight that led to Plaintiff-Appellant not being reported to the Union by Defendants-Respondents is completely irrelevant. As the district court properly found (A294), the Union was legally authorized to negotiate the CBA on his behalf even if he was not a member of the Union at all. *See* 29 U.S.C. § 159(a) (stating that unions "selected for the purpose of collective bargaining by the majority of the employees shall be the exclusive representative of all the employees . . . for the purposes of collective bargaining in respect to rates of pay, wages, hours of employments, or other conditions of employment"); *see also Bevills v. Merchants Fast Motor Lines, Inc.*, 876 F. Supp. 129, 130 (N.D. Tex. 1995) ("Collective bargaining agreements govern all employees within the bargaining class, regardless of actual union membership.") (citing *Steele*, 323 U.S. at 200-01).

Moreover, as this Court has already found, and as relied upon by the district court (A294), it is also irrelevant whether Plaintiff-Appellant was provided a copy of the CBA. *See White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 182-83 (2d Cir. 2001) (noting that "[f]ederal labor law does not require rank-and-file ratification of employer-union agreements," and "the union has no duty to inform the members of the agreement.").

Plaintiff-Appellant's assertion that he only speaks Spanish and does not read and write in English should not concern this Court either. Courts in the Second Circuit and in New York have considered and rejected such arguments. *See Rodriguez*, 877 F.3d at 124 (affirming district court decision compelling arbitration and dismissing complaint despite plaintiff arguing that his ability to read English was limited, holding that a "language barrier does not prevent enforcement of contract obligations."); *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 122 (2d Cir. 2010) ("New York courts have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the document explained to him."); *Moss v. Rent-A-Center, Inc.*, No. 06-cv-3312, 2007 WL 2362207, at *5 (E.D.N.Y. Aug. 15, 2007) ("if Plaintiffs did not understand the form of the arbitration agreement or had questions about it, the burden was upon them to have their concerns addressed before placing their signatures on the agreement."); *Holcomb v. TWR Express, Inc.*, 11 A.D.3d 513 (N.Y. App. Div., 2d Dept. 2004) ("A person who is illiterate in the English language is not automatically excused from complying with the terms of a contract simply because he or she could not read it."); *Maines Paper & Food Service Inc. v. Adel*, 256 A.D.2d 760 (N.Y. App. Div., 3d Dept. 1998) ("An inability to understand the English language, without more, is insufficient to avoid this general rule."). This argument is actually a red-herring

because it is immaterial if Plaintiff-Appellant understands English because his Union bargained for him on his behalf.

This Court has also already found the fact that the CBA's grievance procedure contains a mediation provision is not a bar to compelled arbitration. *Abdullayeva*, 928 F.3d at 224 (directing the district court to compel arbitration where the provision authorized employees to submit claims to arbitration "following the conclusion of mediation."). Indeed, "courts confronting situations in which a plaintiff has not exhausted the grievance and arbitration procedure set forth in a [CBA] have compelled arbitration, without prejudice to the plaintiff's ability to seek further relief in court should he later find himself precluded from arbitration." *Alfonso v. Maggies Paratransit Corp.*, 203 F.Supp.3d 244, 251 (E.D.N.Y. 2016); *see also Greene v. Am. Bldg. Maint.*, No. 12-cv-4899, 2013 WL 4647520, at *3 (E.D.N.Y. Aug. 28, 2013) (compelling arbitration where plaintiff had not alleged that he made any attempt to arbitrate or that he was prevented or impeded from arbitrating his claims, and dismissing his claims without prejudice to refile should his arbitration efforts be blocked.).

As has already been explained to counsel for Plaintiff-Appellant by this very Court, some of the other arguments he asserts in his appellate brief are simply without merit. *Rodriguez*, 877 F.3d at 124. The Supreme Court's decision in *Barrentine* is not a barrier to compelled arbitration. *Id*. This Court's decision in

*Cheeks* is not a barrier to compelled arbitration. *Id.* The potential cost of arbitration, thoroughly considered by the district court here (A296), is also not a barrier to compelled arbitration. *Rodriguez*, 877 F.3d at 124. Finally, like in *Rodriguez*, Plaintiff-Appellant has made no showing that compelled arbitration would not lead to the "effective vindication" of statutory rights. 877 F.3d at 124.

It is also clear that a union may, on behalf of its members, waive their right to a jury trial and instead agree to have their claims arbitrated. The Supreme Court has made clear that a union and an employer in a collective bargaining agreement "can waive a judicial forum for union members' statutory claims." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–82, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998). This argument from Plaintiff-Appellant in particular lacks any legal merit whatsoever because, if his position were to be accepted, then it would mean that every other single court that has compelled arbitration of employment disputes has been incorrect and violated the employee's constitutional rights, including those from this Court and out of this circuit.

In short, the district court's decision should still be affirmed on substantive grounds if the Court does not dismiss the appeal for lack of jurisdiction.

### C.     *Defendants-Respondent's Inadvertent Failure to Report Plaintiff-Appellant to the Union Does Not Alter the Analysis*

Plaintiff-Appellant makes much of the fact that Defendants-Respondents inadvertently failed to report him to the Union and, thus, he was not on the Union

rolls during his employment. (P. Brief at Point V(1).) It is undisputed that an administrative oversight led to Plaintiff-Appellant not being reported to the Union. (A227 at ¶ 1.) Defendants-Respondents do dispute and object to every single reference to "fraud," "misrepresentation," and any other form of impropriety asserted by Plaintiff-Appellant without any support in the record.

Nevertheless, the fact that Plaintiff-Appellant was not reported to the Union does not alter the analysis in any way. As the district court found, even if Plaintiff-Appellant was never a member of the Union, that does not change the fact that the Union was still the exclusive bargaining agent for all employees of Defendants-Respondents covered by section 2 of the CBA, which includes Plaintiff-Appellant. (A294 (citing 29 U.S.C. § 159(a).) Defendants-Respondents have made clear that they will work to ensure that Plaintiff-Appellant receives all compensation and benefits he would be entitled to as a member of the Union. (A226, 228 at ¶ 4.) Regardless of what he received or should have received, the CBA and its arbitration provision governed the terms and conditions of his employment.

For example, in *Aboul*, 2021 WL 3887594, where the employee-plaintiff disputed that he was a member of the union at issue, just like the case at bar, the United States District Court for the Southern District of New York held that

> [e]ven if Plaintiff were somehow not a member in good standing of the union, he would still, as a housekeeping employee, be bound by the collective bargaining agreement. Article 2 of the CBA states that the employer 'agrees to and does hereby recognize the Union as the sole

and exclusive bargaining agent for all full and regular part time
employees including . . . housekeeping. Such a 'recognition clause' in
a CBA 'indicates that the agreement applies to union and non-union
employees alike.'

*Id.* at *3 n.3, *appeal dismissed*, 2021 WL 7709524 (citing *Rahm v. J. Hall, Ltd.*, No.

07-cv-0726, 2011 WL 1136465, at *5 (N.D.N.Y. Mar. 25, 2011); *see also Pena*,

2021 WL 3146031, at *3 ("Even if Pena was not a member of the union at all . . .

the union was legally authorized to negotiate collective bargaining agreements on

his behalf."); *Bevills*, 876 F. Supp. at 130 (citing *Steele.*, 323 U.S. at 200–01)

("Collective bargaining agreements govern all employees within the bargaining

class, regardless of actual union membership.")). Thus, under the circumstances of

this case, Plaintiff-Appellant would "be bound by the terms of [the CBA] even if not

a union member." *Prudential Ins. Co. of Am. v. Stella*, 994 F. Supp. 308, 315 (E.D.

Pa. 1998) (citing *Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 11 (1st Cir.

1995); *Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154, 1156 (10th Cir. 1991)).

Moreover, even if Plaintiff-Appellant was not in the Union and no CBA

existed at all in this case, that would still not end the inquiry. As argued in the district

court on Defendants-Respondents' motion to dismiss (A76-78), Plaintiff-Appellant

also signed two individual arbitration agreements with Defendants-Respondents

(A36-40; A58-61) which were not considered by the district court because all parties

agreed that the CBA would take precedence over individualized arbitration

agreements (A292). However, it is well-settled that this Court is "free to affirm on

any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995). Thus, should this Court even hear this appeal after getting over the jurisdictional hurdle to doing so, and credits Plaintiff-Appellant's arguments such that it overturns the district court, it should either affirm based upon the individual arbitration agreements Plaintiff-Appellant signed, which would lead to the same result of compelled arbitration and a stay of proceedings, or simply remand to the district court for further findings on that issue.

For the reasons set forth above, the district court's first decision should be affirmed should this Court reach the substantive issues raised by the appeal.

### III. EVEN IF THE APPEAL IS NOT DISMISSED, THE COURT SHOULD AFFIRM THE SECOND DECISION OF THE DISTRICT COURT

Even if it were an appealable final order in this case and this Court determines it has jurisdiction to hear this appeal, "[FRCP]60(b) decisions by district courts are accorded deference. [The Second Circuit] reverse[s] only where there has been an abuse of discretion." *Grace*, 443 F.3d at 187. The district court did not abuse its discretion here in determining that its first decision was not a "final order" for purposes of FRCP60(b) and, even if it were, the district court could have properly denied the motion on substantive grounds.

Generally, "Rule 60(b) allows a court to 'relieve a party . . . from a final judgment, order, or proceeding." *Catskill Development LLC v. Park Place Entertainment Corp.*, 286 F.Supp.2d 309, 312 (S.D.N.Y. 2003). The rule "provides an extraordinary remedy that is granted only when the movant can demonstrate that exceptional circumstances justify the relief requested." *Id.* (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994)). "The standard test for whether a judgment is 'final' for Rule 60(b) purposes is 'whether the judgment is sufficiently final to be appealed.'" *Datiz v. International Recovery Associates, Inc.*, No. 15-cv-3549, 2017 WL 59085, at *2 (E.D.N.Y. Jan. 4, 2017) (quoting *In Re Palermo*, No. 08-cv-7421, 2011 WL 446209, at *2-3 (S.D.N.Y. Feb. 7, 2011)). Generally, "a judgment is final such that it may be appealed if it 'ends the litigation

on the merits and leaves nothing for the court to do but execute the judgment." *Id.* (internal citations omitted).

In this case, the district court's first decision denied Defendants-Respondents' motion to dismiss, granted Defendants-Respondents' motion to compel arbitration, and stay the action. Such a decision is not a final judgment or order within the meaning of FRCP 60(b). In *Moton v. Maplebear Inc.*, No. 15-cv-8879, 2017 WL 5515943, at *1 (S.D.N.Y. March 20 2017), like here, the plaintiff, represented by Plaintiff-Appellant's counsel (also like here) filed a motion to vacate pursuant to FRCP 60, and requested that the district court vacate its prior decision to compel arbitration and stay proceedings. In that case, the district court specifically noted that such a decision is *not* a final order under FRCP 60(b) and, thus, not reviewable pursuant to FRCP 60(b). *Id.* at *2. Plaintiff-Appellant is now asking for precisely the same relief as the plaintiff was seeking in *Moton* through the same counsel. The same analysis applies here – the district court's decision to grant the motion to compel arbitration and stay proceedings is not a final judgment or order for purposes of FRCP 60(b) and the district court did not abuse its discretion in finding as much.

Plaintiff-Appellant's novel argument that the word "final" in FRCP 60(b) only relates to the word "judgment" and not to the word "order" is wholly without merit. (P. Brief at 46.) The Notes of the Advisory Committee on Rules relating to a 1946 amendment to FRCP 60(b) where the word "final" was added clearly state:

The addition of the qualifying word "final" *emphasizes the character of the judgments, orders or proceedings* from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

FRCP 60 Advisory Committee Notes – 1946 Amendment (emphasis added).

For the sake of completeness, even assuming the district court's first decision was a final order, it could have been denied on the substantive grounds raised by Plaintiff-Appellant below which he simply reiterates by this appeal. This Court has repeatedly cautioned that FRCP 60(b) motions are disfavored. *United States v. International Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) ("A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."). "The burden of proof is on the party seeking relief from judgment[.]" *Id.* Rule 60(b) provides, in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judgment.

FRCP 60(b). As such, "a party seeking relief under Rule 60(b)(3) must produce clear and convincing evidence of fraud or misconduct causing material misrepresentations." *Francis v. Culley,* 20-CV-3326 (PKC), 2021 WL 3660719, at

*12 (E.D.N.Y. Aug. 18, 2021) (internal citations omitted) (citing *Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989)).

Alternatively, FRCP 60 (b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case." *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir.1986) (citations and quotation marks omitted). It is only "properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship [.]" *Id.; see also Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (courts may reconsider an earlier opinion if there has been an "intervening change of controlling law . . . new evidence [has become available], or [there is a] need to correct a clear error or prevent manifest injustice") (citation and quotation marks omitted).

In this case, Plaintiff-Appellant appears to assert that Defendants-Respondents "misrepresented" to the district court that Plaintiff-Appellant was a member of the union. That is plainly incorrect. At no time did Defendants-Respondents ever, in their motion papers or in the documents supporting their motion, state that Plaintiff-Appellant was a "member of the union." Rather, Defendants-Respondents asserted that Plaintiff-Appellant was "covered by the CBA" (or words to that effect) which required him to arbitrate the claims asserted in

his lawsuit. (*see* A68; A78-79; A80; A149.) Significantly, the district court did not rely on Plaintiff-Appellant's status as a "member of the union" in reaching its decision to grant Defendants-Respondents' motion to compel arbitration. Rather, the district court made clear that "even if Pena was not a member of the union at all – a fact that is never established definitively – the union was legally authorized to negotiate collective bargaining agreements on his behalf." (A294.)

Contrary to what was contained in Plaintiff-Appellant's motion to vacate and, similarly, this appeal, he was clearly covered by the CBA for the reasons set forth in Point II, *supra*. The contention that Defendants-Respondents somehow misrepresented Plaintiff-Appellant's union membership status to the district court was based entirely on the email interaction between Plaintiff-Appellant's counsel and Charles Clemenza, Vice President of the Union, wherein Mr. Clemenza stated to Plaintiff-Appellant's counsel that Plaintiff-Appellant was not a member of the union, and not covered by the CBA. (A175-78.) Mr. Clemenza, however, was incorrect. As set forth in a subsequent email to Defendants-Respondents' counsel dated September 1, 2021, Mr. Clemenza stated as follows:

Dear Mr. Weinberger,

Mr. Pena was not reported to the Union therefore did not appear in the Union data base, however I was mistaken when I stated that Mr. Pena was not covered by the Collective Bargaining Agreement.

I would like to retract my e-mail response to Mr. Pena's attorney, with sincere apologies to all involved.

Mr. Pena did in fact work for 63 West as an Engineer which is a classification covered and recognized under the CBA.

The fact that Mr. Pena was an oversight by the company and not reported to the Union was the bases for the confusion on my part and lead to the inaccurate email to Mr. Pena's Attorney.

Mr. Pena is covered by the Collective Bargaining Agreement and the Union will be seeking any loses (sic) of benefits etc. related to Mr. Pena.

Sincerely,

Charlie Clemenza
ESJB

(A226.) As Mr. Clemenza makes clear, when Plaintiff-Appellant's counsel called to inquire as to his client's union status, Mr. Clemenza reviewed the Union's internal database and Plaintiff-Appellant's name did not appear. (A226.) This is due to an administrative oversight by which Defendants-Respondents did not report Plaintiff-Appellant to the Union when he began working for 63 West in April 2019. (A228 at ¶ 4.) However, as Mr. Clemenza clarified, Plaintiff-Appellant was covered by the CBA because he was employed by the company as an engineer, and Article 2 of the CBA makes clear that engineers were covered by the CBA. (A226; A228 at ¶ 4.)

In short, Mr. Clemenza was mistaken when he told Plaintiff-Appellant's counsel that Plaintiff-Appellant was not covered by the CBA. Thus, Plaintiff-Appellant's argument that Defendants-Respondents "misrepresented" facts to the district court or engaged in some other "misconduct" which would justify vacating

the decision is wholly without merit and must be rejected. Plaintiff was covered by the CBA, and the legal analysis provided by the district court in its July 23, 2021, decision was, and still is, correct. *See Aboul*, 2021 WL 3887594, at *3, n3 ("Even if Plaintiff were somehow not a member in good standing of the union, he would still, as a housekeeping employee, be bound by the collective bargaining agreement. Article 2 of the CBA states that the employer "agrees to and does hereby recognize the Union as the sole and exclusive bargaining agent for all full and regular part time employees including . . . housekeeping. Such a "recognition clause" in a CBA "indicates that the agreement applies to union and non-union employees alike.")

Finally, Plaintiff-Appellant also sought redress under FRCP 60(b)(6). "If Rules 60(b)(1) through (5) do not apply, and if extraordinary circumstances are present or the failure to grant relief would work an extreme hardship on the movant, then a party may seek relief under Rule 60(b)(6)." *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 109 (2d Cir. 2012). By his appeal, Plaintiff-Appellant asserts that there was a need to vacate the first decision of the district court because, if as the district court ruled, then he would be entitled to the many benefits provided by the CBA but "it is not clear at all, how we can put Humpty Dumpty back together again." (P. Brief at 16, 45.) Aside from arguing as much, Plaintiff-Appellant made no factual showing below as to how (to use his words) Humpty Dumpty could not be put back together again. Mr. Clemenza stated in his email that the Union "will be

seeking any loses of benefits etc., related to Mr. Pena." (A226.) Moreover, the Defendants-Respondents' human resources representative, Michele DiSanto, attested that "if Plaintiff is owed any compensation or monies under the CBA, 63 West LLC will work with the Union to ensure that Plaintiff receives all that he is entitled to." (A228 at ¶ 4.) Plaintiff-Appellant has failed to explain why vacating the district court's decision would be necessary for Plaintiff-Appellant to collect the benefits which he may not have received under the CBA. Both the union and the company agree that Plaintiff-Appellant was covered by the CBA and will be entitled to any lost benefits, including compensation. In short, Plaintiff-Appellant has hardly demonstrated (let alone by clear and convincing evidence) the requisite "extraordinary circumstances" and "extreme hardship" that would provide a sufficient basis for vacating the district court's decision under FRCP 60(b)(6).

## <u>CONCLUSION</u>

For the foregoing reasons, the appeal should be dismissed for lack of jurisdiction or, alternatively, the two orders of the district court on appeal should be affirmed, with costs in favor of Defendants-Respondents.

Dated:      November 28, 2022          Respectfully submitted,
             New York, NY

Stuart A. Weinberger
Goldberg and Weinberger LLP
630 Third Avenue, 18th Floor
New York, NY 10017
(212) 867-9595
stuart575@aol.com

47

## CERTIFICATION PURSUANT TO
## Fed R. App. P. 32(A)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of FRAP 32(a)(7)(B) and (C) because the brief contains 10,705 words of text excluding those parts of the brief that are permissible to exclude, as counted by the word processing program utilized to prepare the brief, Microsoft® Word for Microsoft 365 MSO**.**

The brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because the brief was prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO**,** Times New Roman font, Size 14.

Dated:        November 28, 2022

Stuart A. Weinberger