# 21-2031

## United States Court of Appeals
## for the Second Circuit



NELSON PENA,

*Plaintiff-Appellant,*

v.

220 EAST 197 REALTY LLC, and 63 WEST L.L.C.,

*Defendants-Respondents.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

ABDUL HASSAN LAW GROUP, PLLC
*Attorneys for Plaintiff-Appellant*
215-28 Hillside Avenue
Queens Village, New York 11427
(718) 740-1000
*legal@abdulhassan.com*

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................ *iii*

I.   PRELIMINARY STATEMENT ........................................................1

II.  ARGUMENTS ...................................................................................1

    1. DEFENDANTS' DO NOT GENUINELY DISPUTE THAT THEIR
       EGREGIOUS CONDUCT IN CONCEALING PLAINTIFF AND
       HIS EMPLOYMENT FROM THE UNION, AND THEN
       CONCEALING THIS MATERIAL FACT FROM THE COURT
       AND PLAINTIFF UNTIL CAUGHT DOING SO, IS RELEVANT
       TO ALMOST EVERY ISSUE AND ARGUMENT HEREIN, AND
       INDEPENDENTLY WARRANTS A DENIAL OF THE MOTION
       TO COMPEL ARBITRATION UNDER THE UNION CBA ......................1

       (A) CONFLICT OF INTEREST.....................................................4

       (B) THE UNION HAS EFFECTIVELY DECLINED................................5

       (C) DEFAULT/WAIVER.........................................................7

       (D) NO KNOWING, VOLUNTARY, CLEAR AND
           UNMISTAKABLE WAIVER OF THE CONSTITUTIONAL
           RIGHT TO A JURY TRIAL ...............................................9

       (E) EFFECTIVE VINDICATION DOCTRINE .......................................11

       (F) DEFENDANTS ATTEMPT TO APPEAL THE REJECTION
           OF ITS MOTION TO COMPEL BASED ON PURPORTED
           INDIVIUDAL ARBITRATION AGREEMENTS, MUST FAIL,
           ESPECIALLY AT THIS STAGE .........................................12

    2. THIS COURT HAS JURISDICTION TO HEAR AND DECIDE
       THIS APPEAL ON NUMEROUS GROUNDS ...........................................14

*i*

(A) APPELLATE JURISDICTION UNDER LMRA/COCA-COLA .......14

(B) APPELLATE JURISDICTION UNDER FAA....................................17

(C) APPELLATE JURISDICTION - COLLATERAL ORDER ..............19

(D) APPELLATE JURISDICTION – WRIT OF MANDAMUS .............20

3. THE DISTRICT COURT HAD LEGAL AUTHORITY TO REVIEW AND DECIDE THE MOTION TO VACATE, INCLUDING UNDER FRCP § 60 ...........................................................23

4. OTHER POINTS AND CLARIFICATIONS .............................................24

III. CONCLUSION ...............................................................................................26

CERTIFICATION PURSUANT TO Fed. R. App. P. 32(a)(7)(B) and (C) ...........27

# TABLE OF AUTHORITIES

*Cases*                                                   *Page(s)*

*Aboul v. Amsterdam Hospitality Group, LLC*,
 Nos. 21- cv-2432, 21-cv-2449, 2021 WL 3887594
 (S.D.N.Y. Aug. 31, 2021) ......................................................................16

*Aboul v. Amsterdam Hospitality Group, LLC*,
 Nos. 21-cv-2432, 21- cv-2449, 2021 WL 7709524 (2d Cir. Nov. 24, 2021) ......16

*Am. Exp. Co. v. Italian Colors Rest.*,
 570 U.S. 228, 235 (2013) .......................................................................11

*Barrentine v. Arkansas-Best Freight System, Inc.*,
 450 U.S. 728 (1981) ........................................................4, 5, 6, 22, 24

*Barrows v. Brinker Rest. Corp.*,
 36 F.4th 45, 49 (2d Cir. 2022) ...............................................................13

*Brooklyn Savings Bank v. O'Neil*,
 324 U.S. 697 (1945) ...............................................................................5

*Brown v. Dillard's, Inc.*,
 430 F.3d 1004, 1012-1013 (9th Cir. 2005) ......................................18, 21

*Cheeks v. Freeport Pancake House, Inc.*,
 796 F.3d 199 (2d Cir. 2015) ...........................................................5, 6, 24

*Coca-Cola v. Brewery Workers Union*,
 242 F.3d 52, 54 (2d Cir. 2001) ...........................................14, 15, 16, 17

*Cota v. Art Brand Studios, LLC*,
 No. 21-CV-1519 (LJL), 2021 WL 4864588,
 at 11–12 (S.D.N.Y. Oct. 15, 2021) ..................................................18, 21

*Gomez v. Winn Management Group LLC*,
 Case No. 18-CV-8559, ECF No. 21
 (SDNY - June 3, 2019 – Judge Furman) .................................................13

*In re Repetitive Stress Injury Litigation*,
    35 F.3d 637 (2d Cir. 1994).......................................................................20

*Kulak v. City of New York*,
    88 F.3d 63, 71 (2d Cir. 1996)..................................................................13

*Lamps Plus, Inc. v. Varela*,
    203 L. Ed. 2d 636, 139 S. Ct. 1407, 1413–14 (2019)....................17, 19

*Liberty Synergistics Inc. v. Microflo Ltd.*,
    718 F.3d 138, 143 (2d Cir. 2013)............................................................19

*Molina v. Mallah Org., Inc.*,
    804 F. Supp. 504, 512 (S.D.N.Y. 1992)....................................................4

*Morgan v. Sundance, Inc.*,
    142 S. Ct. 1708, 1714, 212 L. Ed. 2d 753 (2022)....................................7

*Rodriguez v. Parts Authority, Inc.*,
    877 F.3d 122 (2d Cir. 2017)......................................................6, 24, 25

*United States v. Prevezon Holdings Ltd.*,
    839 F.3d 227, 235 (2d Cir. 2016)...........................................4, 20, 21, 22

*Waters v. Churchill*,
    511 U.S. 661, 678 (1994).........................................................................16

*White v. White Rose Food, a Div. of DiGiorgio Corp.*,
    237 F.3d 174, 182-83 (2d Cir. 2001)......................................................25

*Will v. Hallock*,
    546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 236 (2006)..................19

**Statutes/Regulations/Miscellaneous**

9 U.S.C. § 4.................................................................................................13

9 U.S.C. § 16(a)(3)................................................................................17, 19

28 U.S.C. § 1291.................................................................................14, 17

Collective Bargaining Agreement ("CBA")....................................*passim*

Federal Arbitration Act ("FAA")......................................................*passim*

FLSA ...................................................................................................*passim*

FRCP § 60 .................................................................................9, 23, 24

Labor Management Relations Act ("LMRA") .....................14, 15, 16, 17

National Labor Relations Act ("NLRA") ...............................................14

NYLL ......................................................................................................11

NYLL 195 ...............................................................................................11

Section 16 of the FAA ......................................................................14, 16

Section 301 of the Labor Management Relations Act ("LMRA")...................15, 16

## I.     PRELIMINARY STATEMENT

Plaintiff-Appellant Nelson Pena ("Plaintiff," "Appellant" or "Pena") hereby submits the instant brief in reply to the opposing brief of Defendants-Appellees 220 East 197 Realty LLC and 63 West L.L.C. (collectively "Defendants," or "Appellees") and in further support of his appeal of the district court's orders. Most of Defendants' arguments were already addressed in Plaintiff's opening brief ("Pl. Br."), but some additional points will be addressed herein. Defendants' opposition confirms that this Court has jurisdiction and that the district court committed reversible error.

## II.     ARGUMENTS

1. **DEFENDANTS' DO NOT GENUINELY DISPUTE THAT THEIR EGREGIOUS CONDUCT IN CONCEALING PLAINTIFF AND HIS EMPLOYMENT FROM THE UNION, AND THEN CONCEALING THIS MATERIAL FACT FROM THE COURT AND PLAINTIFF UNTIL CAUGHT DOING SO, IS RELEVANT TO ALMOST EVERY ISSUE AND ARGUMENT HEREIN, AND INDEPENDENTLY WARRANTS A DENIAL OF THE MOTION TO COMPEL ARBITRATION UNDER THE UNION CBA**

Only when caught red handed, Defendants finally admitted on the motion to vacate that they failed to notify the union of Plaintiff and his employment – deliberate concealment that defrauded Plaintiff of tens of thousands of dollars in union wages, benefits, and CBA/representation. Defendants then sought to conceal the reason for their failure by labelling it as "Administrate Oversight." However,

1

Defendant still has not identified or explained the administrate oversight because there was no administrate oversight – it was a deliberate and fraudulent concealment of Plaintiff and his employment from the union – a conclusion powerfully supported by the facts and circumstances, and which impacts almost every issue and argument in this matter.

Notably, Defendants argue that they knew all along that Plaintiff was obviously and clearly covered by the CBA – just that there was an administrative oversight in letting the union know that Plaintiff was covered by the CBA. In their opposition, Defendants resurrect an argument that Plaintiff signed an individual arbitration agreement on or about June 8, 2020. (Def. Br. 10, 37); (A122-A125). This document is a complex legal document almost certainly prepared by lawyers and Defendants obviously knew and do not dispute that they could not enter such agreements with employees covered by the June 2019 CBA (A127 – A142) (as the district court also found), without the knowledge and consent of the union. As such, Defendants position that Plaintiff was covered by the CBA, and its position that it entered into this purported individual arbitration agreement with Plaintiff, demonstrates that Defendants knowingly and intentionally circumvented the union in order to defraud the Plaintiff of union wages, benefits and representation. Moreover, Defendants do not dispute that they concealed other workers identified by Plaintiff in his papers, from the union.

In addition, although Defendants knew Plaintiff was covered by the CBA, they did not notify the union of Plaintiff when the CBA took effect in June 2019 – an egregious and willful failure once again. Although Defendants knew Plaintiff was covered by the CBA, they did not withhold union dues from Plaintiff's paycheck each pay period – a repeated knowing and intentional circumvention of the union. Although Defendants knew Plaintiff was covered by the CBA, they did not make health benefits and retirement contributions for the Plaintiff – repeated and deliberate conduct once again. Although Defendants knew Plaintiff was covered by the CBA in their day-to-day management and supervision of the Plaintiff, they did not give him the rights he was entitled to such as scheduling, seniority, overtime, enhanced wage rates etc. Although Defendant knew Plaintiff was covered by the CBA at the time they terminated his employment, they terminated him without good cause and without union notification, involvement and representation – egregious, knowing, intentional and deliberate conduct.

Although Defendants knew Plaintiff was never reported to the union, they concealed this material information from the Court and Plaintiff's counsel and only admitted it when they had no choice on the motion to vacate – because they knew such information and facts were fatal to their motion to compel and is fatal to their opposition to this appeal.

## (A)CONFLICT OF INTEREST

The U.S. Supreme Court in *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728 (1981), held that a conflict of interest between the union and employee is grounds for an employee to file his case in court instead of in arbitration. (Pl. Br. 40-42). In fact, even outside of the FLSA context, it is well settled that persons and entities should not represent those with whom they have a conflict of interest. See also, *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 242 (2d Cir. 2016)("For the reasons given above, we grant the petition for a writ of mandamus and instruct the district court to enter an order disqualifying Moscow and Baker Hostetler from representing *Prevezon* in this litigation.").

It does not appear that Defendants addressed this conflict of interests argument because it is profound in this case and precludes arbitration here. For example, the Court in *Molina v. Mallah Org., Inc.*, 804 F. Supp. 504, 512 (S.D.N.Y. 1992), disqualified a union-affiliated attorney because of conflicts of interests between the employees and union and stated as follows:

> Such multiple representation may result in a variety of conflicts among the clients. For example, as we suggested at the summary judgment hearing, plaintiffs may well have claims against the Union for failing to stop defendants' scheme until it had been defrauding them and the Funds for nearly a decade. Tr. at 39–40. And, as defendants argue in their memorandum of law, plaintiffs may well have claims against the union trustees for breach of fiduciary duty if it transpires that they too improperly failed to act to stop defendants' prohibited acts. Or, with respect to discovery, plaintiffs' counsel may become aware of inculpating facts that pit one of its clients against

4

another. Or defendants may bring an impleader indemnification action against the Union, alleging, for example, that it acquiesced in the plan.

Similarly, and more profound in this case, Plaintiff may "have claims against the union for failing to stop defendants' scheme" – unions are expected to conduct payroll and site audits to discover the very type of non-reporting engaged in by Defendants here. Similarly, the union is likely to act to protect its interests which will be at the expense of Plaintiff's interests if the union represented him in an arbitration. Likewise, "defendants may bring an impleader indemnification action against the Union, alleging, for example, that it acquiesced in the plan" by Defendants to defraud Plaintiff of union CBA, wages, benefits and representation.

### (B) THE UNION HAS EFFECTIVELY DECLINED

It is well settled that when a union declines or does not pursue an employee's claim through the arbitration process, the employee has a right to bring those claims in Court. See *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728 (1981). (Pl. Br. 36-40). This is especially so in a case like this one where we are dealing with FLSA claims which cannot be waived or forfeited as a matter of law. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015).

Contrary to Defendants' argument (Def. Br. 34-35), Plaintiff is not relying on *Barrentine* and *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), for the proposition that FLSA claims are non-arbitrable as a matter of law –

an issue settled in *Rodriguez v. Parts Authority, Inc.*, 877 F.3d 122 (2d Cir. 2017).

Instead, Plaintiff makes the obvious argument that because FLSA claims cannot be

waived or forfeited as set forth in *Cheeks* and *Barrentine*, where the union has

effectively declined to arbitrate the claims, the Plaintiff must be allowed to bring

the claims in Court as per *Barrentine*, so that the claims are not lost, waived,

diminished or forfeited.

Here, while mischaracterizing Plaintiff's reliance on *Barrentine* and *Cheeks*,

Defendants do not appear to dispute or genuinely dispute that the union has

effectively declined arbitration given the conflict of interests above and the fact

that the union has stopped communicating with the Plaintiff and even the Court

(Pl. Br. 11-13) – soon after Defendants reached out to the union for it to change its

position. (A226). Significantly, it is also reasonable to conclude that the union

views itself at this point as the legal adversary of the Plaintiff and therefore cannot

represent Plaintiff in this matter – given that Plaintiff may have legal claims

against both the union and Defendants because Plaintiff was unlawfully deprived

of union benefits, wages and representation throughout his employment, as

explained above and below.

Moreover, Plaintiff has explained that the union does not have any authority

whatsoever to enter into any agreement requiring the Plaintiff to conduct

arbitration by himself without the union or to obligate Plaintiff to pay for such

6

arbitration (Pl. Br. 39) – especially in light of the other arguments and the powerful fact that Defendants concealed Plaintiff and his employment from the union and there was never any knowing, voluntary, intelligent, clear and unmistakable waiver of the Constitutional right to a jury trial in the first place. Defendant has not cited any authority addressing and contradicting Plaintiff on this issue.

### (C)DEFAULT/WAIVER

Plaintiff argued that arbitration jurisprudence – whether under the FAA or the union statutes, does not require arbitration where the movant is in default and where the movant has waived/forfeited the right to arbitrate, if any. (Pl. Br. 33-36). Very recently in *Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1714, 212 L. Ed. 2d 753 (2022), the U.S. Supreme Court held that the right to arbitrate can be waived/relinquished, where the party has "knowingly relinquish the right to arbitrate by acting inconsistently with that right." Here, Defendants' conduct in concealing the Plaintiff from the union and the union and CBA/arbitration provision from the Plaintiff is profoundly inconsistent with the arbitration provision in the CBA upon which Defendants now rely. Moreover, Defendants argument that they entered into an unlawful side arbitration agreement with Plaintiff (Def. Br. 10, 37), is profoundly inconsistent with arbitration under the CBA as well as arbitration outside the CBA because such alleged side agreement would be unlawful under the CBA and demonstrates an utter rejection of

arbitration under the CBA. Plaintiff has compellingly shown that Defendants' conduct in failing to report Plaintiff to the union was egregious, knowing and intentional – there is no other reasonable conclusion that can be reached. By contrast, Defendants have not explained or identified any administrative oversight – because Defendants' circumvention of the union was knowing, intentional and fraudulent.

Defendants' response to this argument seems to be that it promises to make things right and give Plaintiff his benefits, but remarkably, Defendants have not identified any benefit it has provided to Plaintiff since Defendants were caught more than a year ago, not reporting Plaintiff (and other workers) to the union. Defendants have also not demonstrated how we can go back in time and recreate reality, meet deadlines that have been passed, etc., and where the union that must conduct the arbitration is no longer responding to the Plaintiff and if now a legal adversary of the Plaintiff. Obviously, Plaintiff should never be forced back into the embrace of Defendants that defrauded him in an egregious way, concealed material information from the court and Plaintiff's lawyer and continue to do nothing to provide Plaintiff with benefits. As the saying goes, *fool me once shame on you, fool me twice shame on me.*

### (D) NO *KNOWING*, VOLUNTARY, CLEAR AND UNMISTAKABLE WAIVER OF THE CONSTITUTIONAL RIGHT TO A JURY TRIAL

In his opening brief, Plaintiff argued that even if Plaintiff was covered by the CBA, Plaintiff's right to a jury trial was not waived, because it is not disputed and genuinely disputed that Plaintiff did not know he was a union member, the union did not know of Plaintiff, and in light of Defendants' damning admission – only after the FRCP § 60 motion to vacate was filed, that Defendants violated their legal obligations and failed to notify the union of Plaintiff and his employment. (Pl. Br. 25-33).

In response, Defendants argue that the lower court found that "Pena's supposed lack of awareness is irrelevant." (Def. Br. 32). Once again, in using the word "supposed" the lower court seem not to believe Plaintiff but we now know that Plaintiff was telling the truth given Defendants' subsequent admission that they concealed the union/CBA from Plaintiff and concealed the Plaintiff from the union – something that probably came as a shock to the lower court later on the motion to vacate.

In any event, the lower did not find that the union's lack of awareness of the Plaintiff was immaterial – concealment of the union from Plaintiff was also obviously material and fatal to Defendants motion to compel as explained in the opening brief. (Pl. Br. 25-32). Once again, the lower court likely could not imagine

9

that it was dealing with a situation where the employer concealed the Plaintiff and the union from each other – because such a thing usually only occurs because of fraud and intentional wrongdoing as we explained above once again.

Not surprisingly, Defendants have not cited any case where a Court found a knowing, voluntary and unmistakable waiver of the constitutional right to a jury trial by a union/agent where the union did not know of the Plaintiff and the Plaintiff did not know of the union. Obviously, unknowing is the opposite of knowing.

By way of reminder, unlike almost every other provision in a CBA, arbitration requires the waiver of the Constitutional right to a jury trial and the very high standard for waiving this right set by the U.S. Supreme Court and this Court, cannot be altered by lower-level laws such as statutes, regulations, or by organizations such as unions. The right to a jury trial/judicial forum can be waived by an agent such as a union but only if the knowing, and unmistakable standard is met - it is also elementary under agency law that the agent and principal must at least know of each other.

As such, this Court should make it crystal clear that where a union does not know of the employee and the employee does not know of the union and CBA – especially because of the conduct of the employer, there cannot be a finding in the

employer's favor of a *knowing*, voluntary, intelligent, clear and unmistakable waiver of the Constitutional right to a jury trial.

Moreover, any notice and knowledge of the waiver of the constitutional right to a jury trial is not effective unless it is done in a language that is understood by an employee. None of the cases cited by Defendants address the impact of the current/amended version of NYLL 195 – which can be reasonably viewed as requiring important employment information to be provided in a language the employee can understand – especially a popular language like Spanish.

### (E) EFFECTIVE VINDICATION DOCTRINE

The U.S. Supreme Court has held that arbitration should be denied under the effective vindication doctrine where the claims cannot be effectively vindicated in arbitration especially highly protected statutory claims like those in this case under the FLSA and NYLL. See *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 235 (2013). (Pl. Br. 45). This doctrine also covers grounds set forth above such as conflicts of interest, and union refusal to arbitrate, etc. While mentioning the doctrine in summary fashion, Defendants do not genuinely address or dispute that the doctrine would preclude arbitration in the context of this case. It is not difficult to conclude that in light of all the negative effects as laid out above that flowed from Defendants' unlawful, knowing, intentional and egregious failure to report Plaintiff and his employment to the union, Plaintiff cannot effectively vindicate his

11

statutory rights and claims in arbitration. In fact, Defendants in their opposition, still has not explained or cited any precedent as to how we can go back in time and comply with the deadlines that have passed, the procedures that were missed, and provide all the protections and benefits under the CBA that should have been provided long ago. In other words, it is not clear at all, how we can put Humpty Dumpty back together again at this late stage – given that it is Defendants improper conduct that caused the union and Plaintiff not to know of each other, the burden is on Defendants to answer these questions and remedy all the negative effects flowing from their wrongdoing, and they have not even come remotely close to doing so. Allowing this case to move forward in court is the only legally proper, fair and realistic option.

**(F) DEFENDANTS ATTEMPT TO APPEAL THE REJECTION OF ITS MOTION TO COMPEL BASED ON PURPORTED INDIVIUDAL ARBITRATION AGREEMENTS, MUST FAIL, ESPECIALLY AT THIS STAGE**

As part of its motion to compel arbitration, Defendants also moved to compel arbitration based on two purported individual arbitration agreements which was not granted by the lower court. (Def. Br. 10, 37). At the outset, these arguments of Defendants fail because Defendants never filed a notice of cross-appeal.

Moreover, Defendants agreed and the lower court found that the CBA trumped, overrode and precluded such purported private arbitration agreements.

12

(Def. Br. 10). Defendants even submitted affidavits subsequently that the CBA covers Plaintiff's employment. As such, Defendants cannot argue otherwise at this stage.

Very significantly, however, the lower court could not grant the motion based on the purported individual arbitration agreements because Defendant did not put forth testimony from anyone with actual, personal knowledge of Plaintiff signing the subject agreements. On the other hand, Plaintiff testified that he did not sign said agreements and even submitted copies of his signature which differ from the purported signature on the documents (A114, ¶¶ 5-7) – at minimum, issues of fact exist that require a jury trial on these issues. *Barrows v. Brinker Rest. Corp.,* 36 F.4th 45, 49 (2d Cir. 2022)('At this stage, we do not know. But in deciding a motion to compel arbitration, as for a summary judgment motion, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). And to the extent this case turns on Barrows's (and on Brinker's) credibility or trustworthiness, the place to sort it out is, as the FAA provides, at "trial." 9 U.S.C. § 4.'). *Gomez v. Winn Management Group LLC*, Case No. 18-CV-8559, ECF No. 21 (SDNY - June 3, 2019 – Judge Furman)("Drawing all reasonable inferences in Plaintiff's favor, such evidence would permit a reasonable factfinder to disregard the training log and the other evidence offered by Defendant — including the signed agreement — and

13

find that Plaintiff did not sign the agreement, which would of course mean he is not obligated to arbitrate.").

Importantly, however, there is no dispute that if the CBA controls, it trumps all other purported agreements, and here, most of the arguments on appeal are based on the premise that the CBA covers Plaintiff, but arbitration nonetheless cannot be compelled because of a variety of reasons – conflict of interests, union refusal, waiver/forfeiture, absence of knowing waiver, etc.

## 2. THIS COURT HAS JURISDICTION TO HEAR AND DECIDE THIS APPEAL ON NUMEROUS GROUNDS

### (A) APPELLATE JURISDICTION UNDER LMRA/*COCA-COLA*

As explained by Plaintiff in his opening brief, this Court has jurisdiction under 28 U.S.C. § 1291 and its precedents such as *Coca-Cola v. Brewery Workers Union*, 242 F.3d 52, 54 (2d Cir. 2001), because arbitration in this case was compelled solely under the union Collective Bargaining Agreement ("CBA"), and arbitration under a CBA is governed by statutes specific to unions such as the Labor Management Relations Act ("LMRA"), and the National Labor Relations Act ("NLRA") - not the Federal Arbitration Act ("FAA"). See i.e. *Coca-Cola*, 242 F.3d at 54 ("the Union asks us to hold that the district court's order directing arbitration is therefore not appealable pursuant to Section 16 of the FAA. However, we have jurisdiction because the FAA does not apply."). (Pl. Br. 1-3).

14

In response, Defendant states as follows (Def. Br. 3-4):

> Plaintiff-Appellant's reliance on Coca-Cola to argue that this Court does have jurisdiction over his appeal because the FAA does not apply is misplaced. (P. Brief at 1-2). Coca-Cola held only that the FAA does not apply in cases where a party brings a claim under section 301 of the Labor Management Relations Act ("LMRA") for breach of a contract between an employer and a labor organization, such as a collective bargaining agreement. 242 F.3d at 53.

Notably and significantly, Defendants' own description of *Coca-Cola* supports Plaintiff's jurisdiction argument because Defendants' motion to compel arbitration was based on alleged "breach of a contract between an employer and a labor organization, such as a collective bargaining agreement," which is governed by the LMRA and not the FAA – Defendant's argument is that the LMRA gives the union the authority to collectively bargain on behalf of Plaintiff and bind him to arbitration. The jurisdiction/authority of the court to compel arbitration under a union CBA in *Coca-Cola* and this case came from the LMRA which governs such union agreements and not the FAA. The jurisdictional inquiry in the arbitration context focuses on the order compelling arbitration and the authority for it – not on the underlying claims – whether those claims are FLSA claims, or personal injury claims is irrelevant. The underlying claim in *Coca-Cola* just happened to be the same as the arbitration issue.

This Court in *Coca Cola*, 242 F.3d 52, 55, also noted that, "Given the difference in eras and the intervening revolution in labor policy, adherence to the

FAA in Section 301 cases may lead to anomalous or even bizarre results." Indeed, this case presents a prime example. In this regard, the biggest difference between the LMRA and FAA is that unlike the FAA where agreements are signed by the parties themselves, under the LMRA, these agreements are entered into by a third party union, that as this case demonstrates, is not known to the Plaintiff and a union which may not even know of the Plaintiff – because of the employer's wrongdoing, thus increasing the need for additional protection through appeal, especially, where, as here, the arbitration must be conducted by a third party union that is not responding, that was not a party in the case and over whom the court compelling arbitration may not even have jurisdiction and control.

Defendant next argues that (Def. Br. 4):

> Aboul v. Amsterdam Hospitality Group, LLC, Nos. 21- cv-2432, 21-cv-2449, 2021 WL 3887594 (S.D.N.Y. Aug. 31, 2021), was dismissed by this Court, Aboul v. Amsterdam Hospitality Group, LLC, Nos. 21-cv-2432, 21- cv-2449, 2021 WL 7709524 (2d Cir. Nov. 24, 2021), because it sua sponte determined that this Court lacked jurisdiction pursuant to section 16 of the FAA (i.e., not the LMRA that Plaintiff-Appellant now relies on). Id. at 1.

Defendant's reliance on *Aboul* is grossly misplaced. In this regard, the jurisdiction arguments, including those based on *Coca-Cola* and others here, were never raised, briefed or addressed in *Aboul*, and as such, *Aboul* is not controlling and is of little or no relevance to this issue here. *Waters v. Churchill*, 511 U.S. 661, 678 (1994)("cases cannot be read as foreclosing an argument that they never dealt

with"). Moreover, the appellant in *Abdoul* was pro se, the summary order was only a few lines and also without precedential effect, likely for these reasons as well. By contrast, *Coca Cola* is published precedent that is binding and cannot be changed by a subsequent three-judge panel of this Court. In addition, and unlike this case, the result in *Aboul* was not extraordinary or bizarre because unlike Plaintiff here who was concealed from the union and defrauded, it was not genuinely disputed that the Plaintiff in *Aboul* was reported to the union, his pay records reflected union dues, and a union representative was even involved in his termination and the union and the employer did not violate his many rights and exposed themselves so serious legal liability and conflicts by him not being reported to and represented by the union – as is the case here.

### (B)APPELLATE JURISDICTION UNDER FAA

Plaintiff explained in his opening brief that even if the FAA applied and not the LMRA, this Court would have appellate jurisdiction under 28 USC 1291 via the FAA at 9 U.S.C. § 16(a)(3), because the lower court's orders are effectively final orders dealing with arbitration within the meaning of the FAA at 9 U.S.C. § 16(a)(3). *Lamps Plus, Inc. v. Varela*, 203 L. Ed. 2d 636, 139 S. Ct. 1407, 1413–14 (2019) (discussing and applying 9 U.S.C. § 16(a)(3)). In this regard, although, there was no formal dismissal, there is sufficient finality for purposes of appeal because arbitration cannot be done in this case under the CBA and there is no

17

reasonable certainty that arbitration can be accomplished. For example, if the lower court had stayed the case and ordered the Plaintiff to arbitrate through the U.S. Marshalls' union, we would all likely agree that such an arbitration is not feasible and that the lower court's orders are final for purposes of appeal. Similarly, compelling arbitration through a union that is not a party to the case and over whom the court does not have jurisdiction, and a union that has an insurmountable conflict of interests and a union that has stopped communicating and effectively declined to arbitrate, then arbitration is also not feasible or possible and the subject orders are final for purposes of appeal.

The courts in *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012-1013 (9th Cir. 2005) and *Cota v. Art Brand Studios, LLC*, No. 21-CV-1519 (LJL), 2021 WL 4864588, at 11–12 (S.D.N.Y. Oct. 15, 2021), addressed this conundrum. In *Brown*, the Court of Appeals stated that "this case displays a dark side of our nation's policy in favor of arbitration" and the court in *Cota* noted that "to grant a stay in these circumstances would be to place the parties in a perpetual state of uncertainty—unable to proceed with the arbitration pursuant to that tribunal's rules but also unable to proceed with a litigation because the arbitration has not reached its conclusion." The courts in these cases agreed that "To promote our national policy in favor of arbitration, we must decline to compel it in this case." *Brown*, 430 F.3d at 1012-1013.

Where completion of the arbitration process is not feasible, practical or possible, the arbitration order becomes final and the stay effectively ends and the FAA at Section 16(a)(3), permits an appeal – especially, where, as here, the district court has refused to address the merits of the motion to vacate. Moreover, Defendants in their notice of motion requested a dismissal and not a stay. (A19). *Lamps Plus*, 139 S. Ct. 1407, 1414 ('Section 16(a)(3) provides that an appeal may be taken from "a final decision with respect to an arbitration that is subject to this title."').

### (C)APPELLATE JURISDICTION - COLLATERAL ORDER

In the alternative, this Court would have jurisdiction under the collateral order doctrine. See *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 143 (2d Cir. 2013). In response, Defendant states (Def. Br. 6):

> The collateral order doctrine also does not apply in this case. (P. Brief at 3.) "'The requirements for collateral order appeal have been distilled down to three conditions: that an order (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.'" Liberty Synergistics, Inc. v. Microflo, Ltd., 718 F.3d 138, 146 (2d Cir. 2013) (quoting Will v. Hallock, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 236 (2006)). Plaintiff-Appellant makes no attempt to demonstrate how any of these conditions have been satisfied. Just like any other case stayed in the district court and sent to arbitration under the FAA, Plaintiff-Appellant here will retain all appellate rights he would normally have following the conclusion of arbitration and proceedings in the district court.

19

Notably, Defendants do not dispute that the first two factors are satisfied. As to the third factor, Plaintiff has explained at length that unlike "any other case stayed in the district court and sent to arbitration," arbitration is not reasonable, feasible or possible in the context of this case and as such, there will likely be no "appellate rights … following the conclusion of arbitration."

### (D) APPELLATE JURISDICTION – WRIT OF MANDAMUS

This Court would also have jurisdiction because it can treat this appeal as a petition for a writ of mandamus – in the unlikely event appellate jurisdiction is not found on the other grounds set forth above. See *In re Repetitive Stress Injury Litigation*, 35 F.3d 637 (2d Cir. 1994). The requirements for a writ of mandamus are more easily satisfied in this case than in the very recent case of *United States v. Prevezon Holdings Ltd.,* 839 F.3d 227, 235 (2d Cir. 2016), in which this Court treated the appeal as a writ of mandamus and found that the requirements for issuing the writ were met.

Both sides have invoked this Court's decision in *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 242 (2d Cir. 2016), as to the mandamus issue. In *Prevezon*, this Court treated the appeal as a petition for a writ of mandamus on a conflict of interests issue. As we noted in the opening brief, the requirements for mandamus are satisfied with even greater force here than in *Prevezon*. At the

20

outset, we note than both this case and *Prevezon* involve a profound conflict of interests that significantly and materially impacts the proceedings.

As to the first factor – adequate means of obtaining relief, as explained above and below, borrowing from the court in *Cota*, Plaintiff is caught in a perpetual state of uncertainty – unable to do union arbitration as directed and unable to litigate further in court because arbitration is not completed. This factor is more powerful here because in *Prevezon*, the appellant could have continued with the litigation, but here, Plaintiff and even the court have no control over the union and cannot force it to engage in arbitration – Defendants failed to make the union a party to their motion to compel.

As to the second factor, as in *Prevezon*, "The writ is appropriate in the circumstances of this case, because this case implicates a significant and novel question of law" and "because resolving that issue will aid in the administration of justice." This issue is what the Court of Appeals in *Brown* referred to as the dark side of arbitration and what the *Cota* court referred to as a perpetual state of uncertainty – where a plaintiff cannot realistically complete arbitration and also cannot go forward with litigation as a result – because of the issue of fraudulent concealment and the resulting conflict of interests, union refusal, default/waiver, etc.

As to the third factor - the clear and indisputable right to the writ, this is related to the second. The merits have been addressed at length in the opening brief and also herein. However, as set forth in *Prevezon*, conflict of interests has always been grounds for disqualification and especially under the U.S. Supreme Court decision in *Barrentine* which dealt with union conflicts in the FLSA context like we have here – a specific and actual conflict. Here, the conflict is as profound as it can get – the union and the Plaintiff are in effect legal adversaries with the union likely liable to the Plaintiff for not providing him with representation and benefits and not acting to discover Defendants' failure to report him to the union such as through a payroll audit provided for in the CBA or site audit/visit. If the union actually knew of the non-reporting and Defendants did so intentionally as seems to be the case, then the liability and legal jeopardy is much greater. Since Defendants' conduct created the conflict, they cannot complain if arbitration is precluded especially at this late stage.

There are other grounds as well as set forth above.  Quoting *Prevezon*, Defendant argues that "This "Court issues a writ only in exceptional circumstances." Indeed, we are dealing with extraordinary circumstances where Defendants concealed Plaintiff from the union, concealed this info from the Court and only admitted it on the motion to vacate, the Court refused to address the merits of the issue on the motion to vacate, the union has stopped communicating

with Plaintiff and is now the legal adversary of the Plaintiff, and the union is not even a party in the case, and where Plaintiff is caught in a perpetual state of deadlock and uncertainty.

### 3. THE DISTRICT COURT HAD LEGAL AUTHORITY TO REVIEW AND DECIDE THE MOTION TO VACATE, INCLUDING UNDER FRCP § 60

In terms of the motion to vacate, Defendant first argues that the subject orders were not final. However, as we have demonstrated above the order was effectively final.

In terms of the merits, Defendant continues to argue that its concealment is irrelevant. However, as set forth above and in the opening brief, Defendants' conduct in concealing Plaintiff from the union and the union/CBA from Plaintiff is material to the *knowing* requirement, the conflict of interests issue, the default/waiver argument, and the disappearance of the union now, etc. One can understand why Defendants want to downplay their egregious wrongdoing and concealment but others in the case should not do so – even though the entire situation is highly unfortunate.

In terms of the application of the word *final*, the text as written seem to literally and logically apply to the word *judgements* and not the other words. However, if Defendants' interpretation and reliance on the Advisory Committee Notes is correct, then the district court was wrong in not addressing the merits of

the motion – because under Defendants' approach, if the subject order was interlocutory, the district court had the inherent authority to address the merits of the motion to vacate without any showing that the requirements of FRCP Rule 60 were met. The district court's refusal to reach the merits of the motion to vacate, compellingly reinforces the jurisdiction arguments made by Plaintiff and the need for this Court to exercise appellate jurisdiction.

### 4. OTHER POINTS AND CLARIFICATIONS

Defendants cite to cases like *Rodriguez*, *Toure*, *Barrentine* and *Cheeks* and appear to claim that Plaintiff is arguing that FLSA claims are non-arbitrable as a matter of law. Not so. Plaintiff is arguing that the requirements for arbitration have not been satisfied – absence of conflict of interests, union refusal, waiver/default, absence of knowing waiver, etc. For example, *Barrentine* and *Cheeks* reiterated that FLSA claims cannot be waived or forfeited and *Barrentine* holds that a plaintiff does not have to arbitrate where there is a real conflict of interests with union, where the union declines arbitration, etc.

Similarly, *Rodriguez* and *Toure* reaffirmed the effective vindication doctrine which was used in *Toure* to invalidate several provisions. Neither *Toure* nor *Rodriguez* dealt with reliance on third party union to arbitrate, and did not involve the egregious conduct by Defendants in concealing Plaintiff from the union and the union and CBA from Plaintiff, and the conflicts, waiver/default and other fatal

24

defects that flowed from that. Both *Rodriguez* and *Toure* resulted in good settlements for the plaintiffs without arbitration – when the dust settled, it appeared that the defendants in these cases did not want to pay costs of arbitration – especially after the modifications made under the effective vindication doctrine in *Toure*.

Also, Plaintiff is not arguing that a union cannot waive the right to a jury trial on behalf of those it represents. Plaintiff is making the simple but powerful point, that where a union waives the jury trial right of others, it must satisfy the very high standard of *knowing*, voluntary, clear and unmistakable waiver. Defendant has not cited any controlling caselaw stating otherwise. Simply put, when knowledge is missing, innocent employees are also egregiously defrauded – like Plaintiff in this case. Relatedly, Defendants' reliance on *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 182-83 (2d Cir. 2001), is misplaced. *White* dealt with a settlement agreement for wages and did not involve the waiver of the Constitutional right to a jury trial and the high standard it carries which cannot be altered by lower-level authorities such as statutes, regulations, unions etc. Similarly, in *White*, the union and those it represented all knew of each other and were working together to exercise and protect their rights – unlike this case where Defendants hid the Plaintiff from the union and hid the union/CBA

25

from Plaintiff and defrauded Plaintiff in the process of tens of thousands of dollars in union wages, benefits, and representation.

### III.   CONCLUSION

Based on the foregoing, it is respectfully requested that this Honorable Court grant Plaintiff's appeal in its entirety and: 1) reverse the orders of the district court and deny Defendants' motion to compel arbitration in its entirety and allow this case to proceed in federal court without further delay; and 2) grant Plaintiff such other, further and different relief in his favor as this Court deems just and proper.

Dated: Queens Village, New York
      December 19, 2022

Respectfully submitted,

Abdul Hassan Law Group, PLLC

*Abdul Hassan*

Abdul K. Hassan, Esq. (AH6510)
215-28 Hillside Avenue, Queens Village, NY 11427
Tel: 718-740-1000, Fax: 718-740-2000
Email: abdul@abdulhassan.com

## CERTIFICATION PURSUANT TO
## Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 6,172 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2003, Times New Roman, Size 14.

Dated: Queens Village, New York
     December 19, 2022

                               _____/s/_____

*DB*